# No. 19-17506

### IN THE
## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

### AHUD CHAZIZA,
*Plaintiff-Appellant,*

*v.*

### STAMMERJOHN, Caseworker; et al.,
*Defendants-Appellees.*

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR NEVADA
MIRANDA M. DU, DISTRICT JUDGE · CASE NO. 3:17-CV-00247-MMD-WGC

## APPELLANT'S PRO BONO OPENING BRIEF

<table>
<tr>
<td align="center"><strong>HORVITZ & LEVY LLP</strong><br>BARRY R. LEVY<br>EMILY V. CUATTO<br>3601 WEST OLIVE AVENUE, 8TH FLOOR<br>BURBANK, CALIFORNIA 91505-4681<br>(818) 995-0800</td>
<td align="center"><strong>KAYE, MCLANE, BEDNARSKI<br>& LITT, LLP</strong><br>CAITLIN S. WEISBERG<br>975 EAST GREEN STREET<br>PASADENA, CALIFORNIA 91106<br>(626) 844-7660</td>
</tr>
</table>

**UCLA SCHOOL OF LAW**
**NINTH CIRCUIT APPELLATE ADVOCACY**
**PRISONERS' RIGHTS CLINIC**
AARON LITTMAN
ILSE M. GOMEZ (CERTIFIED LAW STUDENT)
BENJAMIN S. LEVINE (CERTIFIED LAW STUDENT)
385 CHARLES E. YOUNG DRIVE EAST
1242 LAW BUILDING, ROOM 3472
LOS ANGELES, CALIFORNIA 90095
(310) 825-9562

ATTORNEYS FOR PLAINTIFF-APPELLANT
**AHUD CHAZIZA**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................... v

INTRODUCTION .................................................................................. 1

JURISDICTIONAL STATEMENT ......................................................... 2

STATEMENT OF ISSUES PRESENTED ............................................... 3

STATEMENT OF THE CASE ................................................................ 4

I.     The Nevada Department of Corrections ("NDOC") disregards Nevada law requiring the application of good time and other statutory credits toward parole eligibility. ...................................... 4

     A.     Nevada prisoners sentenced under "minimum-maximum" statutes are entitled to application of statutory credits toward parole eligibility. ............................ 4

     B.     For many years, the NDOC does not properly apply state law and declines to apply statutory credits toward any prisoners' parole eligibility. ................................ 8

     C.     In *Vonseydewitz*, the Nevada Supreme Court rejects the NDOC's position and recognizes that credits apply toward parole eligibility for prisoners with minimum-maximum sentences. The NDOC persists in denying prisoners this benefit. ........................................... 9

     D.     In *Williams*, the Nevada Supreme Court reiterates that prisoners with minimum-maximum sentences are entitled to application of credits toward parole eligibility. The NDOC finally complies. ................................ 13

II.     The NDOC repeatedly refuses to apply Chaziza's credits toward his parole eligibility until after a court orders it to do so, granting Chaziza a parole hearing more than two years after he had first been entitled to one. ......................................... 14

i

A.      Chaziza is sentenced to two consecutive terms and is assigned a parole eligibility date upon starting his second term of incarceration. ............................................... 14

B.      Chaziza first informs the NDOC that it has failed to apply his good time credits toward his parole eligibility, delaying his parole eligibility date by over two years. ......... 16

C.      Defendants Stammerjohn, Sandie, and Deal deny Chaziza's grievances requesting the recalculation of his parole eligibility date. ......................................................... 17

D.      Chaziza files a petition for habeas corpus in state court. The Nevada Attorney General's office eventually agrees that Chaziza is entitled to recalculation of parole eligibility under *Williams*. ......................................... 19

E.      Despite its concession of error, the NDOC fails to promptly apply *Williams* to Chaziza. Four months later, after it was expressly ordered to do so, the NDOC finally recalculates Chaziza's parole eligibility date ............ 20

F.      Chaziza has his parole hearing more than two years after his parole eligibility date and is denied parole ............ 22

III.    Chaziza brings this action to challenge the NDOC's failure to timely apply his credits toward his parole eligibility. The district court grants summary judgment for Defendants, giving rise to this appeal. ............................................................ 23

A.      Chaziza files a civil rights complaint alleging violation of his due process rights resulting from the NDOC's refusal to apply his credits toward his parole eligibility as required by *Vonseydewitz*. ............................................... 23

B.      The district court grants summary judgment for Defendants and denies partial summary judgment for Chaziza. Chaziza files this appeal. ...................................... 24

SUMMARY OF THE ARGUMENT ....................................................... 25

ARGUMENT ....................................................................................... 27

I.      Legal standard and standard of review ....................................... 27

II.     Chaziza had a protected liberty interest in parole eligibility,
        which was violated when he was denied a timely parole
        hearing for over two years. .......................................................... 28

        A.      State law creates protected liberty interests cognizable
                under the Due Process Clause. ............................................ 28

        B.      Nevada law uses mandatory language to create a
                protected liberty interest in parole eligibility and
                parole consideration for those eligible. ................................ 30

        C.      The district court's conclusion that Chaziza lacked a
                protected liberty interest in parole eligibility was based
                on several legal errors. ....................................................... 33

                1.      The district court incorrectly relied on the lack of
                        a liberty interest in having parole granted to
                        conclude that there was also no liberty interest in
                        parole eligibility. ...................................................... 33

                2.      The district court erred in concluding that the
                        denial of consideration for parole involves a mere
                        error of state law without constitutional due
                        process implications. ................................................. 36

                3.      The district court erred in employing the
                        framework from the Supreme Court's decision in
                        *Sandin,* which is inapplicable to parole cases. ............. 38

        D.      Defendants' deprivation of Chaziza's liberty interest in
                parole consideration was without due process of law. ......... 42

III.    Defendants caused the deprivation of Chaziza's liberty
        interest in parole consideration. ................................................. 45

A.   A prison official causes a deprivation of a prisoner's rights, and is therefore liable for it, when he becomes aware of an ongoing deprivation and fails to take any corrective action. ...............................................................45

B.   Deal had the authority to properly apply Chaziza's credits to his parole eligibility date but willfully declined to do so, making Deal a participant in the deprivation. ...........................................................48

C.   Sandie and Stammerjohn failed to alert NDOC officials to the error in Chaziza's parole eligibility calculations, making them participants in the deprivation. ......................50

CONCLUSION .......................................................................52

STATEMENT OF RELATED CASES .....................................53

CERTIFICATE OF COMPLIANCE.........................................54

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Alexander v. Perrill,*
916 F.2d 1392 (9th Cir. 1990).......................................................... 43, 46

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242 (1986).......................................................................... 28

*Anselmo v. Bisbee*
396 P.3d 848 (Nev. 2017) ....................................................... 31, 32, 35

*Bd. of Pardons v. Allen,*
482 U.S. 369 (1987)............................................................... *passim*

*BNSF Ry. Co. v. Or. Dep't of Revenue,*
965 F.3d 681 (9th Cir. 2020)............................................................. 28

*Collins v. City of Harker Heights,*
503 U.S. 115 (1992)........................................................................... 42

*Colwell v. Bannister,*
763 F.3d 1060 (9th Cir. 2014)............................................... 45, 48, 49

*Conn v. Gabbert,*
526 U.S. 286 (1999)........................................................................... 27

*Cooper v. S.C. Dep't of Probation, Parole & Pardon Servs.,*
661 S.E.2d 106 (S.C. 2008) ............................................................... 32

*County of Sacramento v. Lewis,*
523 U.S. 833 (1998)........................................................................... 42

*Covington v. Fairman,*
123 F. Appx. 738 (9th Cir. 2004) ...................................................... 46

*Engle v. Isaac,*
456 U.S. 107 (1982)........................................................................... 36

v

*Fernandez v. Nevada*,
  No. 3:06-cv-00628-LRH-RAM, 2009 WL 700662 (D. Nev.
  Mar. 13, 2009) ...................................................................... 34, 35, 36

*Gallagher v. Shelton*,
  587 F.3d 1063 (10th Cir. 2009) ....................................................... 48

*George v. Smith*,
  507 F.3d 605 (7th Cir. 2007) .......................................................... 47

*Goldsworthy v. Hannifin*,
  468 P.2d 350 (Nev. 1970) ................................................................. 4

*Greenholtz v. Inmates of Neb. Penal & Corr. Complex*,
  442 U.S. 1 (1979) ................................................................. *passim*

*Haygood v. Younger*,
  769 F.2d 1350 (9th Cir. 1985) .................................................... 44, 46

*Heck v. Humphrey*,
  512 U.S. 477 (1994) ................................................................. 24, 40

*Johnson v. Duffy*,
  588 F.2d 740 (9th Cir. 1978) .......................................................... 45

*Johnson v. Garofalo*,
  No. 2:16-cv-01889-GMN-VCF, 2019 WL 938860 (D. Nev.
  Feb. 25, 2019) .............................................................................. 32

*Jones v. Williams*,
  297 F.3d 930 (9th Cir. 2002) .......................................................... 45

*Klein v. Coblentz*,
  132 F.3d 42, 1997 WL 767538 (10th Cir. 1997) .................... 39, 40, 41

*McQuillion v. Duncan*,
  306 F.3d 895 (9th Cir. 2002) ............................................. 29, 38, 39, 41

*Miller v. Or. Bd. of Parole & Post-Prison Supervision*,
  642 F.3d 711 (9th Cir. 2011) .................................................. *passim*

*Mitchell v. Nevada,*
   No. 2:17-cv-00686-APG-DJA, 2019 WL 5423018 (D. Nev.
   Oct. 23, 2019) ...................................................................................45

*Moor v. Palmer,*
   603 F.3d 658 (9th Cir. 2010).............................................. 34, 35, 36

*Peralta v. Dillard*
   744 F.3d 1076, 1083 (9th Cir. 2014) ................................................45

*Ramirez v. Galaza,*
   334 F.3d 850 (9th Cir. 2003).............................................................48

*Reece v. Williams,*
   No. 2:20-cv-00960-JAD-VCF, 2020 WL 3172994 (D. Nev.
   June 15, 2020) ...................................................................................32

*Reynolds v. Wolff,*
   916 F. Supp. 1018 (D. Nev. 1996).....................................................31

*Robins v. Meecham,*
   60 F.3d 1436 (9th Cir. 1995).............................................................46

*Rodriguez v. Nev. Bd. of Parole,*
   No. 2:18-cv-01525-GMN-BNW, 2019 WL 2375124 (D. Nev.
   June 5, 2019).....................................................................................32

*Sandin v. Conner,*
   515 U.S. 472 (1995)......................................................... 38, 39, 40, 41

*Sandoval v. County of Sonoma,*
   912 F.3d 509 (9th Cir. 2018).............................................................27

*Smith v. Mensinger,*
   293 F.3d 641 (3d Cir. 2002) .............................................................46

*Snow v. McDaniel,*
   681 F.3d 978 (9th Cir. 2012)........................................... 45, 48, 49, 50

*Swarthout v. Cooke,*
   562 U.S. 216 (2011)..................................................................... 36, 37

*Vonseydewitz v. Legrand,*
131 Nev. 1360, 2015 WL 3936827 (2015) .................................. *passim*

*Walker v. Aranas,*
No. 3:16-cv-00455-MMD-WGC, 2018 WL 6929247 (D.
Nev. Dec. 4, 2018) ................................................................ 47, 50, 51

*Wallis v. Princess Cruises, Inc.,*
306 F.3d 827 (9th Cir. 2002) ............................................................27

*West v. Atkins,*
487 U.S. 42 (1988) ..........................................................................27

*Wilkinson v. Dotson,*
544 U.S. 74 (2005) .................................................................... 39, 40

*Williams v. State Dep't of Corr.,*
402 P.3d 1260 (Nev. 2017) ...................................................... *passim*

*Wolff v. McDonnell,*
418 U.S. 539 (1974) .................................................... 30, 40, 41, 42

## Statutes

28 U.S.C.
§ 1291 ..........................................................................................3
§ 1331 ..........................................................................................2
§ 1391(b) ......................................................................................3

42 U.S.C. § 1983 ............................................................... *passim*

Nevada Revised Statutes

§ 200.030(4) (2013) ................................................................. 7
§ 200.330 (1995) ...................................................................... 7
§ 200.380(2) (1995) ................................................................ 15
§ 200.375 ................................................................................ 36
§ 213.120(2) (1995) ............................................................ 6, 9
§ 213.131 ........................................................................ 30, 36
§ 213.131(1)(a)-(b) (2013) ................................................... 30
§ 213.140 ................................................................. 30, 31, 36
§ 213.140(1) ........................................................................... 30
§ 213.140(1) (1999) ................................................................. 6
§ 213.142 (1999) .................................................................... 15
§ 209.4465 ................................................................... *passim*
§ 209.4465(1) ............................................................. 5, 24, 30
§ 209.4465(1) (2003) ............................................... 4, 5, 24, 30
§ 209.4465(1) (2007) ............................................................... 5
§ 209.4465(2)-(5) ..................................................................... 5
§ 209.4465(7)(a) ...................................................................... 5
§ 209.4465(7)(b) ........................................................... *passim*
§ 209.4465(8) ......................................................................... 18
§ 213.1214 .............................................................................. 36
§ 213.10705 (1995) ................................................................ 31

## Rules

Fed. R. App. P. 4(a)(1)(A) ........................................................ 3

Fed. R. Civ. P. 56(a) ................................................................ 28

## Miscellaneous

Assemb. B. 510, § 5, 2007 Leg., 74th Sess. (Nev. 2007) ..................... 5, 17

# APPELLANT'S PRO BONO OPENING BRIEF

## INTRODUCTION

This is a civil rights action under 42 U.S.C. § 1983 arising from the decisions of Nevada Department of Corrections ("NDOC") officials to deny Plaintiff Ahud Chaziza a timely parole hearing for over two years. Misunderstanding the applicable legal principles, the district court erroneously granted summary judgment for the Defendant prison officials and denied Chaziza's cross-motion for partial summary judgment. Under the proper analysis, not only should Defendants' motion have been denied, but Chaziza's partial motion should have been granted, as the facts are undisputed and all elements of the alleged due process violation under § 1983 have been established.

Chaziza was denied his right to be considered for parole when Defendants refused to apply statutory good time credits to determine his parole eligibility date as required by Nevada law. Through repeated grievances, Chaziza alerted Defendants to their error and even identified a directly on-point Nevada Supreme Court decision holding that prisoners like him were entitled to application of credits toward

1

their parole eligibility date. Nevertheless, Defendants persisted in their defiance of the law for two years, until a court ordered them to comply.

The district court concluded that, as a matter of law, Chaziza had no liberty interest in parole eligibility and therefore the deprivation of his right to be considered for parole could not violate the Due Process Clause. But that conclusion was based on—among other errors—a failure to distinguish properly between parole release itself, in which no protected liberty interest exists under Nevada law, and parole *eligibility*, in which Nevada law does create a protected liberty interest, as recognized by the Nevada Supreme Court. Because the undisputed facts show that Defendants' deliberate actions caused Chaziza to be denied parole eligibility arbitrarily and without process for over two years, Defendants were not entitled to summary judgment and Chaziza was. This Court should reverse the judgment with directions to grant Chaziza's motion as to liability under § 1983 and remand for a trial on damages.

## JURISDICTIONAL STATEMENT

The district court had jurisdiction over Chaziza's civil rights action under 28 U.S.C. § 1331. Venue was proper in the District of

Nevada because the constitutional violations occurred in that district and all the parties resided there at the time of the violations. *See* 28 U.S.C. § 1391(b).

On November 12, 2019, the district court entered its final judgment. (1-ER-32–33.) This Court has jurisdiction over this appeal of that judgment under 28 U.S.C. § 1291. Chaziza's notice of appeal was filed on the same day judgment was entered, and thus was timely. Fed. R. App. P. 4(a)(1)(A); 2-ER-332.

## STATEMENT OF ISSUES PRESENTED

1. Did Chaziza have a protected liberty interest of which he was deprived without due process of law where Nevada's parole statutes mandate that NDOC officials determine prisoners' parole eligibility and then afford prisoners a parole hearing once eligible, but NDOC officials did nothing to comply with those statutes until two years after Chaziza was in fact parole eligible?

2. Did Defendants cause the violation of Chaziza's due process rights where they were notified that his parole eligibility date had been incorrectly calculated under Nevada law but they failed to take any action to correct it?

3

## STATEMENT OF THE CASE

I.  **The Nevada Department of Corrections ("NDOC") disregards Nevada law requiring the application of good time and other statutory credits toward parole eligibility.**

   A.  **Nevada prisoners sentenced under "minimum-maximum" statutes are entitled to application of statutory credits toward parole eligibility.**

Nevada's criminal code provides for three types of prison sentences: determinate, "minimum-maximum," and "parole eligibility." *Williams v. State Dep't of Corr.*, 402 P.3d 1260, 1264 (Nev. 2017). Determinate sentences set only a maximum term of imprisonment and do not allow for parole; the other two types of sentences do permit parole and are stated as a range of years with a minimum term, which governs parole eligibility, and a maximum term, which governs sentence discharge. *Id.*

In the absence of serious infractions or disobedience, Nevada prisoners automatically accrue good time credits that advance the completion of their sentences. Nev. Rev. Stat. § 209.4465(1) (2003).[1]

_____

[1] The current version of section 209.4465 reflects amendments that postdate Chaziza's 2004 offense. To the extent those amendments would have *increased* Chaziza's punishment, they do not apply to him. *See Goldsworthy v. Hannifin*, 468 P.2d 350, 353-54 (Nev. 1970) (holding

4

These good time credits accrued at a rate of ten days per month until July 1, 2007, and have accrued at a rate of twenty days per month since. *Compare* Nev. Rev. Stat. § 209.4465(1) (2003), *with* Nev. Rev. Stat. § 209.4465(1) (2007).[2] Section 209.4465 also allows for other kinds of statutory credits, including for prisoners' participation in educational programs. *Id.* § 209.4465(2)-(5).

For all three types of sentences, credits received under section 209.4465 are applied to the maximum term of a prisoner's sentence, shortening the total time to be served by one day for each credit earned. *Id.* § 209.4465(1), (7)(a). Under section 209.4465(7)(b), the same credits also "[a]pply to eligibility for parole" as long as the prisoner was not sentenced "pursuant to a statute which specifies a minimum sentence that must be served before a person becomes eligible for parole." Accordingly, for prisoners with parolable sentences that do not require a

---

that United States and Nevada Constitutions prohibit ex post facto laws that adversely impact parole eligibility for offenses already committed). Accordingly, unless otherwise noted, all citations to section 209.4465 in this brief refer to the 2003 version of the statute.

[2] The increase in section 209.4465's credit accrual rate, along with other changes, came about through a Nevada Assembly bill that took effect July 1, 2007. *See* Assemb. B. 510, § 5, 2007 Leg., 74th Sess. (Nev. 2007) ("A.B. 510").

minimum sentence be served prior to becoming parole-eligible, each credit earned also shortens the minimum sentence a prisoner will serve prior to parole consideration by one day. *Id.*[3]

Whether a prisoner is entitled to have good time credits applied toward his parole eligibility under section 209.4465(7)(b) thus depends on which type of sentence the prisoner received. *Williams*, 402 P.3d at 1264-65. As will be explained, prisoners with minimum-maximum sentences receive the benefit of section 209.4465(7)(b); prisoners with parole eligibility sentences do not. *Id.*[4]

Good time credits are not applied to accelerate parole consideration for parole eligibility sentences because those sentences are the type that section 209.4465(7)(b) expressly excludes—i.e., they

---

[3] Section 209.4465(7)(b) refers to "eligibility for parole." Under either type of parolable sentence (minimum-maximum or parole eligibility), a prisoner becomes eligible for parole upon the completion of his or her minimum term. Nev. Rev. Stat. § 213.120(2) (1995); *Williams*, 402 P.3d at 1263-65. A separate Nevada statute, discussed *infra* at Argument Section II.B, dictates that prisoners must be considered for parole, i.e., receive a hearing, when they become eligible. Nev. Rev. Stat. § 213.140(1) (1999). Thus, under Nevada law, completion of a minimum sentence, parole eligibility, parole consideration, and the scheduling of an initial parole hearing are co-extensive.

[4] Section 209.4465(7)(b) does not apply to determinate sentences, which do not allow for parole. *Williams*, 402 P.3d at 1264.

are the types of sentences that "specif[y] a minimum sentence that must be served before a person becomes eligible for parole," *Id.* at 1262-54 (citation omitted); *see, e.g.*, Nev. Rev. Stat. § 200.030(4) (2013) ("A person convicted of murder of the first degree . . . shall be punished . . . [b]y imprisonment in the state prison . . . [f]or a definite term of 50 years, with eligibility for parole beginning when a minimum of 20 years has been served."). For instance, a prisoner who receives a parole eligibility sentence with a minimum term of ten years must serve every day of those ten years, unadjusted by credit, before receiving a parole hearing.

Under minimum-maximum statutes, on the other hand, prisoners do receive credits toward their minimum sentences and thus toward parole eligibility. *Williams*, 402 P.3d 1264-65. This is because minimum-maximum sentences provide for both a minimum and maximum term but do *not* separately speak to parole eligibility. *Id.* at 1263; *see, e.g.*, Nev. Rev. Stat. § 200.330 (1995) ("A person convicted of kidnapping in the second degree . . . shall be punished by imprisonment in the state prison for a minimum term of not less than 2 years and a maximum term of not more than 15 years."). Accordingly, minimum-

7

maximum sentences are not excluded from section 209.4465(7)(b)'s benefit, and prisoners serving that type of sentence are entitled to have statutory credits applied toward their minimum sentences and parole eligibility. *Vonseydewitz v. Legrand,* 131 Nev. 1360, 2015 WL 3936827, at \*2-3 (2015) (unpublished table decision); *Williams*, 402 P.3d at 1263-65. For instance, a prisoner who receives a minimum-maximum sentence with a minimum term of ten years will, absent bad behavior resulting in revocation of credits, receive a parole hearing during his seventh year of incarceration based on good time credits alone (twenty per month).

### B. For many years, the NDOC does not properly apply state law and declines to apply statutory credits toward any prisoners' parole eligibility.

Despite the text of section 209.4465(7)(b) clearly indicating that some category of prisoners is entitled to credit toward parole eligibility, the NDOC for many years did not apply credits toward parole eligibility for any prisoners at all. *See Williams*, 402 P.3d at 1261-62; 2-ER-135, 138.

This illogical approach to section 209.4465(7)(b) effectively rendered it a nullity. In defense of their position, the NDOC advanced

two arguments. First, they argued that minimum-maximum sentencing statutes impliedly require that the prisoner serve the full, unreduced, minimum term before becoming eligible for parole, giving such statutes the exact same meaning as parole eligibility statutes. *Vonseydewitz,* 2015 WL 3936827, at \*1-2; *Williams*, 402 P. 3d at 1262-64. Second, because a separate, more general statute provided that "credits earned . . . pursuant to chapter 209 . . . must not reduce the minimum term of . . . imprisonment . . . ," Nev. Rev. Stat. § 213.120(2) (2013), the NDOC maintained that section 209.4465(7)(b) simply did not apply to any prisoners, regardless of sentence type. (2-ER-138.)

Accordingly, the NDOC did not apply credit toward parole eligibility for any prisoners in its custody, including those with minimum-maximum sentences. *See Williams*, 402 P.3d at 1264.

    **C.**    **In *Vonseydewitz,* the Nevada Supreme Court rejects the NDOC's position and recognizes that credits apply toward parole eligibility for prisoners with minimum-maximum sentences. The NDOC persists in denying prisoners this benefit.**

In 2015, the Nevada Supreme Court decided *Vonseydewitz*, a state prisoner's challenge to the NDOC's practice of refusing to apply section 209.4465 credits toward parole eligibility for prisoners with minimum-

maximum sentences. *See Vonseydewitz*, 2015 WL 3936827, at \*1. In *Vonseydewitz*, the court performed a detailed statutory analysis before rejecting the NDOC's position and recognizing that prisoners sentenced under minimum-maximum statutes were indeed entitled to application of credits toward parole eligibility. *Id.* at \*1-3. The court observed that were this not the case, section 209.4465(7)(b) would be rendered "nugatory in its entirety," explaining: "Parole-eligibility statutes clearly fell within [section] 20[9].4465(7)(b)'s exception, and if minimum-maximum statutes also did, then the exception would have swallowed the whole, depriving [section] 20[9].4465(7)(b)'s general rule that statutory credits '[a]pply to eligibility for parole' of any applicability." *Id.* at \*2.[5] Accordingly, the court concluded that the NDOC had been "improperly denying" the prisoner application of credits toward his parole eligibility. *Id.* at \*3.

The NDOC respondent sought panel rehearing, plainly stating that "were it permitted to stand, *this panel's decision would invalidate*

---

[5] Although the relevant statute is section 209.4465, the court appears to have made a typographical error, referring instead to "[section] 206.4465," a code section that does not exist. *Vonseydewitz*, 2015 WL 3936827, at \*2.

the sentence calculations of the majority of Nevada prisoners sentenced in the last 20 years," and that "*[t]his panel's decision . . . would require* recalculation of the sentences of many of Nevada's prisoners." (Mot. for Jud. Notice 12, 24 [Ex. A, at 3, 15] (boldface omitted, emphasis added).) The Nevada Supreme Court denied the petition. (*Id.* at 32 [Ex. B, at 4].)

The NDOC respondent then petitioned for rehearing en banc, arguing that the claimed "overreaching by the panel affects the sentencing calculations of most Nevada prisoners sentenced within the past twenty years, and is of such significance to the prison population and potentially the courts that en banc reconsideration is warranted." (*Id.* at 34 [Ex. B, at 6].) According to the Attorney General, *Vonseydewitz* meant that "all inmates sentenced to a minimum-maximum sentence between 1995 and 2007 were entitled to the application of statutory credits" toward parole eligibility; the decision had "dramatic repercussions" because it "retroactively determined" that the NDOC "wrongly calculated the parole eligibility of the vast majority of inmates['] sentences during a period of many years." (*Id.* at 44-45 [Ex. B, at 16-17].) The petition harbored no doubts about the direct and unmediated effect of the decision, declaring that "*the panel's decision*

11

*reduces* the minimum sentences of hundreds if not thousands of prisoners in Nevada." (*Id.* at 30 [Ex. B, at 2] (emphasis added).)

The Nevada Supreme Court again denied the petition. (2-ER-141.) In doing so, it directly addressed the scope of the ruling it left undisturbed, agreeing that it applied broadly and articulating the criteria for identifying those prisoners whose sentences would be affected.[6] Although it explained that the category of prisoners entitled to relief was somewhat narrower than the petition had suggested, it made unequivocally clear that its holding applied to others with minimum-maximum sentences. (*Id.*)

Despite the *Vonseydewitz* court's explanation that section 209.4465(7)(b) applies, as a matter of statutory interpretation, to all minimum-maximum sentences, and despite its en banc denial

---

[6] The court set out four criteria for identifying those prisoners to whom its holding applied. (2-ER-141.) First, the prisoner had to be serving a sentence for a crime committed on or between July 17, 1997, and June 30, 2007. (*Id.*) Second, the prisoner's sentence must not have already expired and the prisoner must not have already had a parole hearing for the sentence in question. (*Id.*) Chaziza clearly met both of these criteria. The other two criteria excluded prisoners who were sentenced under specific statutes or who had already received this relief. (*Id.*) Neither of these exclusions applied to Chaziza. (*See id.*) Accordingly, it is undisputed that Chaziza met the court's criteria.

12

delineating the category of prisoners covered by its holding, the NDOC took the position that it was free to ignore *Vonseydewitz*'s holding entirely because it was an unpublished decision. (2-ER-135, 138, 149.) As a result, the NDOC refused to apply credits toward parole eligibility for any prisoner with a minimum-maximum sentence other than Vonseydewitz himself. (*See id.*)

> **D.** **In *Williams*, the Nevada Supreme Court reiterates that prisoners with minimum-maximum sentences are entitled to application of credits toward parole eligibility. The NDOC finally complies.**

Shortly after *Vonseydewitz*, another prisoner sentenced under a minimum-maximum statute challenged the NDOC's refusal to apply her credits toward her parole eligibility under section 209.4465(7)(b). *Williams*, 402 P.3d at 1261. The Nevada Supreme Court again rejected the NDOC's failure to correctly apply the statute and reiterated the reasoning it had articulated in *Vonseydewitz*. The court again observed that interpreting section 209.4465(7)(b) in the NDOC's preferred way would mean "there are no offenders who could benefit . . . , making that statutory language meaningless." *Id.* at 1264. Accordingly, the court again held that the NDOC was improperly denying the petitioner application of credits toward parole eligibility. *Id.* at 1266.

13

Only following *Williams* did the NDOC finally acknowledge that prisoners sentenced under minimum-maximum statutes were entitled to application of credits toward parole eligibility, as the Nevada Supreme Court had repeatedly held. (2-ER-159, 163–64, 171.)

**II.    The NDOC repeatedly refuses to apply Chaziza's credits toward his parole eligibility until after a court orders it to do so, granting Chaziza a parole hearing more than two years after he had first been entitled to one.**

    **A.    Chaziza is sentenced to two consecutive terms and is assigned a parole eligibility date upon starting his second term of incarceration.**

Ahud Chaziza was arrested on October 18, 2006, and held in pretrial detention for offenses committed in 2004. (1-ER-8, 25; 2-ER-178, 244.) In 2009, Chaziza pleaded guilty on two counts, and on May 11, 2009, he was sentenced to two consecutive terms of imprisonment for 60 to 180 months each. (1-ER-5, 8; 2-ER-179, 245.) After sentencing, he was transferred to Lovelock Correctional Center ("LCC"), with credit for time served. On April 26, 2014, he completed his first term and began serving his second term. (1-ER-25.)

14

Chaziza was sentenced to his second term under a minimum-maximum statute.[7] (1-ER-9; 2-ER-219.) At the outset of his second term, the NDOC calculated Chaziza's maximum sentence date using a presumed credit accrual rate, which predicts the number of credits a prisoner will earn while serving his sentence. However, the NDOC calculated his *parole eligibility* date without accounting for such credits; as a result, Chaziza's parole eligibility date was set for April 26, 2019—exactly five years later. (1-ER-16, 27.) If the NDOC had properly applied Chaziza's presumed statutory credits to his minimum term and thus his parole eligibility date, as required by section 209.4465(7)(b), it would have calculated a much earlier projected parole eligibility date, with a parole hearing in February 2016. If denied parole at that time, Chaziza would have been entitled to a second hearing within three years, by February 2019. 2-ER-171, 222, 235–36; *see* Nev. Rev. Stat. § 213.142 (1999).

---

[7] *See* Nev. Rev. Stat. § 200.380(2) (1995) ("A person who commits robbery . . . shall be punished by imprisonment in the state prison for a minimum term of not less than 2 years and a maximum term of not more than 15 years.").

As he proceeded to serve his second sentence, Chaziza in fact accrued good time and other statutory credits pursuant to section 209.4465. The NDOC adjusted his projected maximum sentence to reflect actual, as opposed to presumed, credits, but persisted in refusing to apply the earned credits toward his minimum sentence.

**B.**  **Chaziza first informs the NDOC that it has failed to apply his good time credits toward his parole eligibility, delaying his parole eligibility date by over two years.**

In April 2016, Chaziza wrote a letter to the NDOC Central Timekeeper requesting the recalculation of his parole eligibility date. (2-ER-132–34.) In his letter, Chaziza alerted the NDOC to the 2015 *Vonseydewitz* decision and explained that he was entitled to have credits earned under section 209.4465 applied toward his parole eligibility. (*Id.*) He noted that with his credits so applied, his parole eligibility date should be in 2016, more than two years earlier than the date the NDOC had calculated. (1-ER-16; 2-ER-134, 162.)

The timekeeper denied Chaziza's request one week later via a form letter. (2-ER-135.) On the form, the timekeeper checked a box stating that because *Vonseydewitz* was an unpublished decision, the

16

NDOC was not required to "conform" to it for Chaziza or "any other inmates under similar circumstances."[8] (*Id.*)

### C. Defendants Stammerjohn, Sandie, and Deal deny Chaziza's grievances requesting the recalculation of his parole eligibility date.

Following the timekeeper's denial, Chaziza filed an informal grievance with the NDOC on April 27, 2016. (2-ER-146–48.) Chaziza again drew the NDOC's attention to the *Vonseydewitz* decision and requested that his parole eligibility date be recalculated accordingly. (*Id.*) On June 15, Chaziza's grievance was denied by Defendant Colette Stammerjohn, one of LCC's correctional caseworkers, who also stated that *Vonseydewitz* was inapplicable to prisoners other than the one in that case. (*Id.* at 121, 146, 149, 202 (¶ 15).)

Four days later, on June 19, 2016, Chaziza appealed the denial in a first-level grievance. (*Id.* at 142–43.) He once again highlighted *Vonseydewitz* and requested the proper calculation of his parole

---

[8] In addition to erroneously referring to A.B. 510 credits, as opposed to section 209.4465 credits, the form letter purported to rely on "advice" from the Attorney General's office that *Vonseydewitz* had "no binding authority on anyone else." No evidence of such advice was presented by Defendants below and, in any event, the Attorney General had already taken a contrary position in the *Vonseydewitz* rehearing petitions.

17

eligibility date. (*Id.*) On August 8, 2016, Defendant William Sandie, LCC's Associate Warden, denied the first-level grievance based on the (incorrect) assertion that a statutory amendment, section 209.4465(8), precluded Chaziza from having his credits applied toward his parole eligibility.[9] (*Id.* at 121, 144, 202 (¶ 16).)

Chaziza appealed again, filing a second-level grievance on August 16, 2016. (*Id.* at 139–40.) He attached a copy of the *Vonseydewitz* order denying en banc review, drawing the NDOC's attention to the criteria it set forth for identifying prisoners who qualified for the relief he was requesting. (*Id.* at 140–41.) Chaziza explained that he met those criteria. (*Id.*) Chaziza also explained, correctly and with citation to relevant authority, that Sandie's reliance on section 209.4465(8) was erroneous. (*Id.* at 130–40.)

Defendant Dwayne Deal, head of the NDOC's Offender Management Division, responded to Chaziza's second-level grievance

---

[9] Section 209.4465 was amended in 2007 to include 209.4465(8), which disqualifies prisoners convicted of certain categories of felonies from receiving credits toward their parole eligibility dates. A.B. 510 § 5; *see* Nev. Rev. Stat. § 209.4465(8) (2007). Section 209.4465(8) is one of the amended provisions that does not apply to Chaziza on ex post facto grounds. *See supra* note 1; *see also* 1-ER-8.

18

nearly six months later, in February 2017. (*Id.* at 114–15, 138, 203 (¶ 19).) He denied the grievance, restating the same grounds advanced by Stammerjohn and Sandie. (*Id.* at 138.)

> **D. Chaziza files a petition for habeas corpus in state court. The Nevada Attorney General's office eventually agrees that Chaziza is entitled to recalculation of parole eligibility under *Williams.***

In June 2016, while his informal grievance was pending, Chaziza filed a petition for habeas corpus in the Eleventh Judicial District Court of Nevada. (2-ER-160–62, 216.) In the petition, he requested a writ requiring the NDOC to apply his credits toward his parole eligibility date. (*Id.* at 160–62, 217, 219.) The court denied Chaziza's petition in September 2017, and he timely appealed. (*Id.* at 161, 163, 219–20.)

While Chaziza's habeas appeal was pending, the Nevada Supreme Court issued *Williams*, 402 P.3d, on October 5, 2017. (2-ER-163–64, 168.) The Eleventh Judicial District subsequently notified Chaziza that if he withdrew his appeal, it would reconsider his petition in light of *Williams.* (*Id.* at 161, 168.)

In November 2017, the Nevada Attorney General's office filed a notice stating its non-opposition to Chaziza's motion to withdraw, conceding that Chaziza's petition should be granted with respect to his

parole eligibility claim, and admitting that "*Williams* holds inmates, like Chaziza, were entitled to the application of good-time and statutory credits towards their minimum terms of imprisonment." (2-ER-161, 163–65.)

### E. Despite its concession of error, the NDOC fails to promptly apply *Williams* to Chaziza. Four months later, after it was expressly ordered to do so, the NDOC finally recalculates Chaziza's parole eligibility date.

After *Williams* and the Attorney General's concession that *Williams* applied to him, Chaziza wrote to NDOC Director James Dzurenda. (2-ER-230–33.) In his letter, dated November 29, 2017, Chaziza notified Dzurenda of the *Williams* decision and the Attorney General's office's admission that *Williams* applied to him. (*Id.*) He again requested the recalculation of his parole eligibility date, noting that it should have been in 2016, such that he was long overdue for parole consideration. (*Id.* at 232.) Chaziza further explained: "My mother has health issues and[ ] I lost my father 2 years ago and that is why I am so desperate to return home." (*Id.* at 233.)

Two months later, no action having been taken, Chaziza filed a new informal grievance with the NDOC on February 11, 2018. (*Id.* at

20

160–62.) Like in his letter to Dzurenda, Chaziza explained the status of his habeas petition and requested the recalculation of his parole eligibility date. (*Id.*) And like in his letter, he presented the state's admission that he qualified for relief under *Williams*, which would result in his immediate parole eligibility, more than two years overdue. (*Id.* at 161.) The grievance further pointed out that although the NDOC was processing some prisoners impacted by *Williams*, it was doing nothing to prioritize prisoners who were immediately entitled to relief. (*Id.* at 162.) Chaziza noted that several other prisoners were processed before Chaziza despite their parole eligibility dates not being "past due." (*Id.*)

On February 21, 2018, the Eleventh Judicial District Court granted Chaziza's habeas petition with respect to his parole eligibility claim and ordered the NDOC to apply his credits toward his parole eligibility date within thirty days. (*Id.* at 168–69.)

Shortly thereafter, on February 26, the NDOC granted in part Chaziza's informal grievance. (*Id.* at 159.) The grievance report stated that the NDOC was "aware of the outcome of *Williams v. State* and will be compiling a list of inmates that may be affected by this outcome."

21

(*Id.*) In an attempt to speed up the process, Chaziza followed up with a first-level grievance two days later, attaching his court order and demanding relief. (*Id.* at 154–55.) He received the same response as the informal grievance. (*Id.* at 153.)

Finally, on March 19, 2018, nearly six months after *Williams* and nearly two years after his original letter to the timekeeper, the NDOC recalculated Chaziza's parole eligibility date and determined that it should be moved from April 26, 2019 to February 6, 2016. (*Id.* at 171, 235–36.) Chaziza was added to the list for the next available parole hearing date. (*Id.*)

### F. Chaziza has his parole hearing more than two years after his parole eligibility date and is denied parole.

Chaziza's parole hearing took place several months later on May 30, 2018. (2-ER-173.) In the Parole Risk Assessment and Guideline generated in advance of the hearing, he was assigned a total risk score of zero, was classified as "Low Risk," and was recommended for parole at his first or second hearing. (*Id.* at 226.) Additionally, Deal had previously written in a letter to the Consulate General of Israel that Chaziza's parole eligibility date would be his probable release date, "based upon his minimal criminal record and positive institutional

22

adjustment." (*Id.* at 224.) Despite these favorable forecasts, Chaziza was denied parole at his first hearing in June 2018, after this federal civil rights case had already been filed and was underway. (*Id.* at 173.) Chaziza completed his sentence and was released to ICE custody in August 2020; he was deported shortly thereafter.

**III. Chaziza brings this action to challenge the NDOC's failure to timely apply his credits toward his parole eligibility. The district court grants summary judgment for Defendants, giving rise to this appeal.**

**A. Chaziza files a civil rights complaint alleging violation of his due process rights resulting from the NDOC's refusal to apply his credits toward his parole eligibility as required by *Vonseydewitz*.**

On April 19, 2017, while Chaziza's habeas petition was pending, he filed a pro se civil rights complaint in the District of Nevada against Stammerjohn, Sandie, and Deal.[10] (*See generally* 2-ER-37–48.) His amended complaint, filed on December 8, 2017, alleged two due process

---

[10] During the proceedings below, pro bono counsel other than the undersigned was appointed to represent Chaziza. (*See* 2-ER-100–01.)

violations in separate counts. (*Id.* at 52, 54, 68.) Count I related to the duration of Chaziza's first sentence.[11] (*Id.* at 55–60.)

In Count II, the subject of this appeal, Chaziza alleged that he was denied due process when the Defendants failed to properly apply or ensure application of statutory time credits to his minimum sentence, thus delaying his parole eligibility date. (*Id.* at 61–65.)

### B. The district court grants summary judgment for Defendants and denies partial summary judgment for Chaziza. Chaziza files this appeal.

Defendants filed a motion for summary judgment, and Chaziza separately filed a cross-motion for partial summary judgment as to Defendants' liability. (2-ER-112, 253.) The magistrate judge issued a Report and Recommendation in response to these motions, which the district court adopted in full. (1-ER-4, 24, 33.) With respect to Count II,

---

[11] Specifically, Chaziza alleged that the NDOC failed to afford him eighty-five good time credits that he was owed toward his first sentence under the 2007 amendments to section 209.4465(1). (2-ER-187–89.) The state habeas court had ruled that this claim was mooted by the completion of the sentence, and the district court below held that it was *Heck*-barred. 1-ER-29–30; 2-ER-218; *Heck v. Humphrey*, 512 U.S. 477, 487 (1994) (holding that a claim for damages is not cognizable under § 1983 if it would necessarily imply the invalidity of a plaintiff's conviction or sentence). Count I is not at issue in this appeal.

the district court held that Chaziza did not have a protected liberty interest in parole eligibility and so could not prevail on his due process claim. (*Id.* at 30–32.) Accordingly, the district court denied Chaziza's motion for partial summary judgment and granted Defendants' motion for summary judgment.[12] (*Id.* at 32.) Chaziza appealed, and pro bono counsel was appointed to represent him in his appeal. (2-ER-332; ECF 14-1.)

## SUMMARY OF THE ARGUMENT

1.  Defendants' motion for summary judgment was improperly granted and Chaziza's was improperly denied because Chaziza had a protected liberty interest in being considered for parole, contrary to the district court's determination. In the parole context, state law creates constitutionally protected liberty interests if it uses mandatory language to limit or eliminate the governing agency's discretion in its decision-making. Here, as recognized by the Nevada Supreme Court, Nevada has created such an interest in parole eligibility by requiring

---

[12] The district court did not reach alternative arguments made by Defendants in their motion. (1-ER-32 n.8.)

25

that the NDOC determine when a prisoner is eligible for parole and by requiring that the Parole Board consider him for parole at that time.

Further, Defendants deprived Chaziza of his liberty interest in parole eligibility arbitrarily and without due process protections. Defendants defied a state supreme court decision which the NDOC admitted "require[d]" sentence recalculation for numerous prisoners such as Chaziza, (Mot. for Jud. Notice 23 [Ex. A, at 15]), without any credible justification and without affording him procedural protections of any kind.

2. Defendants personally caused and participated in the violation of Chaziza's due process rights. While the denial of grievances does not in and of itself constitute personal participation, prison officials' failure to act to address a known and ongoing constitutional violation does. Because they refused to correct Chaziza's parole eligibility date after he repeatedly notified them of their error, Defendants are liable for violating his constitutional rights.

26

## ARGUMENT

### I. Legal standard and standard of review

Section 1983 of Title 42 of the United States Code creates a private cause of action to challenge state actors' violations of individual constitutional rights. *Conn v. Gabbert*, 526 U.S. 286, 290 (1999). In a claim brought under § 1983, a plaintiff must show that (1) he was deprived of a federally protected right and (2) the deprivation was caused by an official acting under color of state law. 42 U.S.C. § 1983; *West v. Atkins*, 487 U.S. 42, 48 (1988).

Because summary judgment is a question of law, this Court reviews a district court's order granting or denying summary judgment de novo. *Sandoval v. County of Sonoma*, 912 F.3d 509, 515 (9th Cir. 2018). On review, appellate courts "determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law." *Wallis v. Princess Cruises, Inc.*, 306 F.3d 827, 832 (9th Cir. 2002). A district court's interpretation of a federal or state statute is a question of law also subject to de novo

review. *BNSF Ry. Co. v. Or. Dep't of Revenue*, 965 F.3d 681, 685 (9th Cir. 2020).

A district court may grant summary judgment only when the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). At the summary judgment stage, the nonmoving party's evidence is assumed to be true and all permissible inferences are to be drawn in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

**II. Chaziza had a protected liberty interest in parole eligibility, which was violated when he was denied a timely parole hearing for over two years.**

**A. State law creates protected liberty interests cognizable under the Due Process Clause.**

"The Due Process Clause applies when government action deprives a person of liberty or property." *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). In analyzing an alleged violation, the court must "inquir[e] into the nature of the individual's claimed interest" to determine if it is one protected by the Due Process Clause. *Id.*

In the context of parole, where the federal Constitution itself does not give rise to a protected liberty interest, courts look to state statutes

28

to determine whether they have created liberty interests that are protected under the Due Process Clause. *Miller v. Or. Bd. of Parole & Post-Prison Supervision*, 642 F.3d 711, 714 (9th Cir. 2011) (first citing *Greenholtz*, 442 U.S. at 12, 16; and then citing *Bd. of Pardons v. Allen*, 482 U.S. 369, 370-71 (1987)). Statutes are examined on a case-by-case basis to decide whether they create a protected interest. *Greenholtz*, 442 U.S. at 12.

Under the test set forth by the Supreme Court in *Greenholtz* and *Allen*, mandatory language in a state's statutory scheme gives rise to a constitutionally protected liberty interest if it provides for an entitlement, with or without conditions. *McQuillion v. Duncan*, 306 F.3d 895, 901 (9th Cir. 2002) (first citing *Greenholtz*, 442 U.S. at 12; and then citing *Allen*, 482 U.S. at 377-78); *Miller*, 642 F.3d at 716 (holding that an Oregon statute created a protected liberty interest in parole eligibility because it required a parole hearing when certain findings were made about the prisoner). Significant to this Court's analysis of whether a state statute creates a protected entitlement is the use of the mandatory word "shall." *Miller*, 642 F.3d at 715-16 (citation omitted).

**B.** **Nevada law uses mandatory language to create a protected liberty interest in parole eligibility and parole consideration for those eligible.**

Two parole-related provisions in the Nevada Revised Statutes establish the existence of the protected liberty interest asserted by Chaziza. First, section 213.131 states in relevant part that "[t]he Department of Corrections *shall*: (a) Determine when a prisoner sentenced to imprisonment in the state prison is eligible to be considered for parole[, and] (b) Notify the Board of the eligibility of the prisoner to be considered for parole." Nev. Rev. Stat. § 213.131(1)(a)-(b) (2013) (emphasis added). Second, section 213.140 states in relevant part, "When a prisoner becomes eligible for parole pursuant to this chapter or the regulations adopted pursuant to this chapter, the Board *shall* consider and may authorize the release of the prisoner on parole." Nev. Rev. Stat. § 213.140(1) (emphasis added).[13]

---

[13] Nevada law also creates a protected liberty interest in the accrual of good time credits under section 209.4465(1) and the application of accrued credits to eligibility for parole through the use of mandatory language in section 209.4465(7)(b). *See Wolff v. McDonnell*, 418 U.S. 539, 557, 560-61 (1974) (holding that a state statute that automatically affords good time credits to prisoners subject only to misbehavior creates liberty interest protected by the Due Process Clause because the deprivation of such credits can, *inter alia*, postpone the date of

30

Together, these statutes mandate that the NDOC calculate a prisoner's parole eligibility date and communicate it to the Parole Board, and that the Parole Board consider the prisoner for parole when he becomes eligible. Prisoners in Nevada thus have a protected liberty interest in being deemed eligible, and considered, for parole because these statutes use mandatory language to create an entitlement for those prisoners who have served the required time. *See Miller*, 642 F.3d at 716.

The Nevada Supreme Court's decision in *Anselmo v. Bisbee* confirms as much. 396 P.3d 848 (Nev. 2017). In *Anselmo*, the court observed that section 213.140 "clearly provides that 'the Board shall consider' eligible inmates for parole," and, accordingly held that, while Nevada prisoners have "no due process right in the grant of parole itself,[14] Nevada law clearly confers a right to be 'consider[ed]' for

---

eligibility for parole); *Reynolds v. Wolff*, 916 F. Supp. 1018, 1023 (D. Nev. 1996) (finding that Nevada had created a liberty interest in good time credits under a parallel statutory provision to section 209.4465, using similar language).

14  Nevada law expressly provides that parole is "an act of grace of the State" and so "[n]o person has a right to parole" or protected liberty interest in it. Nev. Rev. Stat. § 213.10705 (1995).

31

parole."[15] *Id.* at 852; *see also Johnson v. Garofalo*, No. 2:16-cv-01889-GMN-VCF, 2019 WL 938860, at *3 (D. Nev. Feb. 25, 2019) (concluding, based on *Anselmo*, that Nevada prisoners have a protected liberty interest in receiving proper consideration for parole despite not having a liberty interest in the grant of parole itself).

The Ninth Circuit has previously employed the *Greenholtz/Allen* mandatory-language test to recognize a protected liberty interest in parole eligibility separate and apart from any liberty interest in parole itself. *Miller*, 642 F.3d at 714-16. In *Miller*, the Oregon statute at issue required the Parole Board to grant early parole consideration for a

---

[15] Some district courts have interpreted the holding in *Anselmo* to mean that Nevada prisoners have a statutory right, but not a constitutionally protected liberty interest, in parole consideration. *See, e.g., Reece v. Williams*, No. 2:20-cv-00960-JAD-VCF, 2020 WL 3172994, at *2 (D. Nev. June 15, 2020); *Rodriguez v. Nev. Bd. of Parole*, No. 2:18-cv-01525-GMN-BNW, 2019 WL 2375124, at *3 (D. Nev. June 5, 2019). *Anselmo* was not drawing such a distinction. That it referred to Nevada prisoners' statutory right to parole consideration is not remarkable; as the court stated in the first sentence of its opinion, liberty interests in the parole process arise from, and do not exist absent, state statutory rights. *Anselmo*, 396 P.3d at 849. Moreover, in explaining its reasoning, the court relied heavily on a South Carolina Supreme Court decision equating the parole board's "abrogat[ion] of an inmate's right to parole eligibility," created by statutory mandate, with "infringe[ment] on a state-created liberty interest." *Id.* at 852 (quoting *Cooper v. S.C. Dep't of Probation, Parole & Pardon Servs.*, 661 S.E.2d 106, 111 (S.C. 2008)).

prisoner convicted of murder if it found that the prisoner was likely to be rehabilitated. *Id.* at 713. A prisoner granted early consideration would then—and only then—receive a parole hearing itself. *Id.* The court reasoned that because the statute used mandatory language to create a presumption of early parole consideration when certain conditions were satisfied, it created a protected liberty interest under the Due Process Clause. *Id.* at 715-16. The same analysis applies here; under the *Greenholtz/Allen* test, Nevada law, which uses mandatory language to require parole consideration based on eligibility, likewise creates a liberty interest in parole consideration upon becoming parole eligible.

C. **The district court's conclusion that Chaziza lacked a protected liberty interest in parole eligibility was based on several legal errors.**

1. **The district court incorrectly relied on the lack of a liberty interest in having parole granted to conclude that there was also no liberty interest in parole eligibility.**

Despite this precedent, the district court took the view that because the ultimate decision to grant parole in Nevada is discretionary, there can be no liberty interest in any aspect of Nevada's parole scheme, including parole eligibility. (1-ER-30–31.)

33

The district court's reasoning ignored the distinction between the existence of a protected liberty interest in parole release and the existence of a protected liberty interest in parole eligibility. In fact, as this Court recognized in *Miller*, 642 F.3d at 713, the latter can exist without regard to the former. Specifically, in concluding that the Oregon statute did create a protected liberty interest in parole eligibility, the *Miller* court emphasized that "these particular sections speak only to early eligibility for a parole hearing for persons convicted of aggravated murder; they promise nothing as far as actually being paroled after the hearing." *Miller*, 642 F.3d at 713 (emphasis omitted). Thus, the existence of a liberty interest in parole eligibility did not depend on there being a liberty interest in parole release itself.

In support of its contrary holding, the district court here cited, without discussion, *Moor v. Palmer*, 603 F.3d 658, 661-62 (9th Cir. 2010), and *Fernandez v. Nevada*, No. 3:06-cv-00628-LRH-RAM, 2009 WL 700662, at *10 (D. Nev. Mar. 13, 2009). (1-ER-31.)

In fact, *Moor* does not stand for the proposition that there is no liberty interest in parole eligibility. In *Moor*, the court held that the plaintiff did not have a liberty interest in parole *release*, based on the

34

fact that Nevada law "expressly disclaims any intent" to create a liberty interest in "the release or continuation of a person on parole." 603 F.3d at 661-62; *see supra* note 14. The court did not reach any conclusion regarding or even discuss the distinct issue of whether there is a liberty interest in parole eligibility because it was not at issue in the case, much less did the court hold that there is no liberty interest in parole eligibility simply because there is no liberty interest in parole itself.

*Fernandez*, an unpublished district court decision, does assert that "where there is no liberty interest in parole, there is no liberty interest in parole eligibility." 2009 WL 700662, at *10. But the opinion offers no legal support for this assertion. It was also decided before the Nevada Supreme Court's decision in *Anselmo*, which found that one of the Nevada statutes at issue in this case does create a liberty interest in parole consideration, and before this Court's decision in *Miller*, which recognized a liberty interest stemming from an Oregon parole eligibility statute that "promise[d] nothing as far as actually being paroled." *Anselmo*, 396 P.3d at 849; *Miller*, 642 F.3d at 712-13. Moreover, *Fernandez* involved unrelated statutory provisions that are not at issue here, contain no mandatory language, and in fact expressly state that

35

they create no rights for Nevada prisoners. *See Fernandez*, 2009 WL 700662, at \*10 (analyzing Nev. Rev. Stat. §§ 200.375 and 213.1214, relating to certification of parole eligibility for high risk offenders). As in *Moor*, the court did not address whether sections 213.131 and 213.140, at issue here, create a liberty interest in parole eligibility.

> **2.     The district court erred in concluding that the denial of consideration for parole involves a mere error of state law without constitutional due process implications.**

The district court's ruling below also relies on a statement by the Supreme Court in *Swarthout v. Cooke*, 562 U.S. 216, 222 (2011), that "a 'mere error of state law' is not a denial of due process" (citation omitted). (1-ER-30–31.) This truism has no bearing here; it stands for the uncontroversial proposition that not every decision by a state agency or state court that is incorrect on the merits violates the federal Constitution's guarantee of due process. *See Swarthout*, 562 U.S. at 222 (citing language to this effect from *Engle v. Isaac*, 456 U.S. 107, 121 n.21 (1982)). Most commonly, this principle is applied in the context of habeas corpus, to make the point that federal habeas corpus relief does not lie for errors of state law. *See, e.g., id.* at 219 (rejecting the notion that "federal habeas relief is available for an error of state law").

36

The *Swarthout* Court did not mean to imply that the requirements of state law are immaterial to the due process inquiry. Indeed, elsewhere in the opinion, the Supreme Court restates the *Greenholtz* holding that, in the context of parole, "[w]hatever liberty interest exists is, of course, a *state* interest created by [state] law." *Id.* at 220. Constitutional due process violations in the parole context therefore always involve errors of state law. What *Swarthout* says regarding "mere" errors is that demonstrating an error of state law is necessary but not sufficient; only those errors involving deprivation of a state-created liberty interest violate due process. *See id.* at 219-20.

In deciding that Chaziza lacked a liberty interest, the district court substituted a facile *Swarthout* quotation for the actual analysis prescribed in *Swarthout* for determining the existence of a liberty interest. In this case, application of the liberty interest analysis in *Greenholtz* and *Allen* (and reaffirmed in *Swarthout*, 562 U.S. at 219-20) leads to the conclusion that Nevada state law did, in fact, create a liberty interest in timely parole consideration. This case concerns much more than a "mere error of state law." It concerns the deprivation of a protected liberty interest.

37

**3.    The district court erred in employing the framework from the Supreme Court's decision in *Sandin*, which is inapplicable to parole cases.**

Finally, the district court misconstrued the holding of *Sandin v. Conner*, 515 U.S. 472 (1995), and erred in applying it at all to Chaziza's case. (1-ER-31–32.) In *Sandin*, the Supreme Court adopted a framework for analyzing asserted liberty interests arising from internal prison regulations, such as those governing placement in disciplinary segregation. *Sandin*, 515 U.S. at 483-84, 486-87; *see McQuillion*, 306 F.3d at 903 (explaining that *Sandin* was motivated by a desire to avoid "the involvement of federal courts in the day-to-day management of prisons"). Under *Sandin*, internal prison regulations create state-protected liberty interests when the deprivations they cause "impose[ ] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," or "will inevitably affect the duration" of a prisoner's sentence. *Sandin*, 515 U.S. at 484, 487. The district court concluded that the denial of parole eligibility did not meet those criteria and therefore did not create a protected liberty interest. (1-ER-31–32.)

As this Court has expressly held, however, *Sandin* did not disturb the *Greenholtz/Allen* mandatory-language test for liberty interests in

38

the parole context. *McQuillion*, 306 F.3d at 903; *see also Miller*, 642 F.3d at 714-16 (analyzing the relevant provisions in Oregon's parole statute using the *Greenholtz/Allen* framework to find a protected liberty interest in early eligibility for a parole hearing). The district court failed to assess the existence of Chaziza's asserted liberty interest under *Greenholtz/Allen* or even to cite these controlling cases, instead erroneously relying on the inapplicable *Sandin* decision.

The district court was also misguided in its reliance on *Wilkinson v. Dotson*, 544 U.S. 74 (2005), and *Klein v. Coblentz*, 132 F.3d 42, 1997 WL 767538 (10th Cir. 1997) (unpublished table decision), to support its *Sandin* analysis. By citation to *Wilkinson*, the district court noted that "speeding up *consideration* for parole does not necessarily imply the invalidity of the duration of the prisoner's sentence." (1-ER-31–32 (citing *Wilkinson*, 544 U.S. at 82).) However, the *Wilkinson* Court made this observation not in assessing the existence of a liberty interest, but in responding to an entirely different question: whether the prisoners' claims were properly raised through § 1983 or habeas corpus. *Wilkinson*, 544 U.S. at 76. *Wilkinson* does not alter or even address the

39

proper analysis for evaluating the existence of a liberty interest in the parole context.[16]

In *Klein,* an unpublished, out-of-circuit opinion, the court applied *Sandin* to conclude that the loss of good time credits did not give rise to a due process claim because it did not inevitably affect the duration of the prisoner's sentence. *Klein,* 1997 WL 767538, at *4. The Tenth Circuit's discussion of the issue in *Klein* is brief, confusing, and limited to Colorado law where "good time credits do not count toward sentence reduction." *Id.* Most importantly, the court disregards the Supreme Court's contrary holding in *Wolff v. McDonnell,* which recognized that good time credits created by state statute were liberty interests of "real substance" and thus protected under the Due Process Clause. 418 U.S. at 557. The Court specifically observed that the deprivation of such credits was "unquestionably a matter of considerable importance" even

---

[16] To the extent that *Wilkinson* has any relevance at all, it undermines the district court's analysis. The Court concluded that the plaintiffs' due process claims could proceed under § 1983 because they would not "necessarily spell speedier release" and were therefore not barred by *Heck,* 512 U.S. at 487. *Wilkinson,* 544 U.S. at 82. In doing so, it implicitly concluded that prisoners may demonstrate a parole-related due process violation without any showing of inevitable effect on sentence duration.

though such deprivation would not necessarily affect the "actual date of parole" or the eventual "termination of parole." *Id.* at 560-61. In establishing a test for determining whether internal prison management regulations create liberty interests, the *Sandin* court expressly left *Wolff*'s holding as to good time credits undisturbed. *Sandin*, 515 U.S. at 483-84 ("The time has come to return to the due process principles we believe were correctly established and applied in *Wolff . . . .*").

Even if the *Klein* court had been correct in reading *Sandin* to hold that deprivation of good time credits through a disciplinary proceeding implicates federal due process concerns only when it will "inevitably affect the duration of a prisoner's sentence," Chaziza's case is easily distinguishable. *Klein*, 1997 WL 767538, at *4. Unlike in *Klein*, Chaziza does not contest a revocation of credits occurring in the "day-to-day management" of prisoner behavior. *McQuillion*, 306 F.3d at 903. Instead, he contests the deprivation of a parole hearing due to Defendants' refusal to apply credits he indisputably earned. As this Court's precedent makes clear, *Greenholtz/Allen*, not *Sandin*, applies to his claim. *Id.*

**D. Defendants' deprivation of Chaziza's liberty interest in parole consideration was without due process of law.**

"The touchstone of due process is protection of the individual against arbitrary action of government." *Wolff v. McDonnell,* 418 U.S. 539, 558 (1974). Deprivation of a protected liberty interest, such as that created by Nevada law in parole consideration, violates due process either if it involves oppressive "exercise of power without any reasonable justification in the service of a legitimate governmental objective" or if it is denied without fundamental procedural fairness. *County of Sacramento v. Lewis*, 523 U.S. 833, 845-46 (1998). The record below demonstrates that Chaziza suffered both forms of constitutional injury.

The conduct of government officials violates the Due Process Clause's substantive protections when it is "conscience shocking." *Collins v. City of Harker Heights*, 503 U.S. 115, 128 (1992). When, as in this case, "extended opportunities to do better are teamed with protracted failure to even care," a plaintiff need not show intent to harm—"indifference is truly shocking." *Lewis*, 523 U.S. at 853. When prison officials responsible for sentence calculation "stand by idly,"

42

failing to address the errors a prisoner has identified, their deliberate indifference can violate his due process rights. *Alexander v. Perrill,* 916 F.2d 1392, 1398 (9th Cir. 1990).

Defendants, with the opportunity to deliberate over a period of months, repeatedly deprived Chaziza of the parole consideration to which he was entitled under state law. They did so with actual knowledge and in open defiance of multiple Nevada Supreme Court decisions. Indeed, in their petitions for panel review and en banc review in *Vonseydewitz,* NDOC officials admitted that, regardless of the decision's unpublished status, it applied beyond the individual petitioner to a broad swath of prisoners and compelled the NDOC to recalculate their parole eligibility dates. (Mot. for Jud. Notice 12, 24 [Ex. A, at 3, 15], 34 [Ex. B, at 6].) This view was affirmed by the Nevada Supreme Court's order denying the petition—an order Chaziza provided to Defendants—yet Defendants knowingly refused to comply with the law in Chaziza's case because *Vonseydewitz* was unpublished. (2-ER-138, 141, 149.) Even after the Nevada Supreme Court reiterated its holding from *Vonseydewitz* in *Williams*—indeed, even after the state *admitted* in Chaziza's habeas proceedings that he had been deprived of

43

timely parole consideration—the NDOC persisted in denying Chaziza a long-overdue parole hearing until it was directly ordered by a state court to recalculate his minimum sentence. (2-ER-163–64, 168–69, 235.) Defendants' behavior throughout was so arbitrary as to shock the conscience and violated the Constitution's guarantee of substantive due process.

Moreover, Defendants' deprivation of Chaziza's protected liberty interest in parole consideration was carried out in the absence of any procedural protections, including a hearing to address the matter prior to any further deprivation. As such, it did not comport with the requirements of the Due Process Clause. *See Haygood v. Younger*, 769 F.2d 1350, 1352-53, 1357-59 (9th Cir. 1985) (en banc) (holding that a prisoner who notified officials that he disputed the miscalculation of his sentence resulting from an erroneous interpretation of state law was entitled to a hearing "before a further denial of liberty can be said to be free from § 1983 liability," and that the opportunity to complain in writing to prison administrators or to pursue relief through state habeas proceedings did not suffice).

44

**III. Defendants caused the deprivation of Chaziza's liberty interest in parole consideration.**

    **A. A prison official causes a deprivation of a prisoner's rights, and is therefore liable for it, when he becomes aware of an ongoing deprivation and fails to take any corrective action.**

Liability under 42 U.S.C. § 1983 requires a causal link between a defendant's conduct and the alleged deprivation of the plaintiff's constitutional rights. *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). Causation may be shown by demonstrating that a defendant personally participated, directly or indirectly, in the alleged deprivation. *See Jones v. Williams*, 297 F.3d 930, 934-35 (9th Cir. 2002).

Officials personally participate when they are made aware of an ongoing deprivation of a prisoner's rights, whether through a grievance process or otherwise, and fail to act to correct it. *See Colwell v. Bannister*, 763 F.3d 1060, 1070 (9th Cir. 2014); *Snow v. McDaniel*, 681 F.3d 978, 989 (9th Cir. 2012), *overruled on other grounds by Peralta v. Dillard*, 744 F.3d 1076, 1083 (9th Cir. 2014) (en banc); *Mitchell v. Nevada*, No. 2:17-cv-00686-APG-DJA, 2019 WL 5423018, at *5 (D. Nev. Oct. 23, 2019) ("[W]hen a defendant becomes aware of a constitutional violation through the grievance process and fails to remedy it, he may

45

be liable under § 1983."), *appeal filed*, No. 19-17350 (9th Cir. Nov. 20, 2019).[17] Officials' failure to act to correct a deprivation may give rise to liability even where it is based on official policy or guidance. *See Haygood*, 769 F.2d at 1358-59 (affirming jury verdict against prison records officers where prisoner had notified them in writing that his release date had passed and they chose not to act, believing his release schedule to be correct because it had been set according to official policy, and where state Supreme Court confirmed that the prisoner was right); *Alexander*, 916 F.2d at 1398 (affirming denial of summary judgment for prison officials who, based on prior Bureau of Prisons memorandum declining to grant plaintiff requested credits, failed to

---

[17] This same concept is embedded in this Court's jurisprudence on supervisory liability and liability based on failure to intervene. *See Robins v. Meecham*, 60 F.3d 1436, 1442 (9th Cir. 1995) (affirming denial of summary judgment for correctional officers, in part, on grounds that they did not attempt to prevent another officer from shooting a prisoner and thus contributed to the alleged violation of his Eighth Amendment rights); *Covington v. Fairman*, 123 F. Appx. 738, 740 (9th Cir. 2004) (stating that "[a] supervisor is liable under § 1983 if there exists a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation," which may be shown by the supervisor's "'fail[ure] to intervene' to prevent" it (citations omitted)); *see also Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002) (holding that a prison official who bears witness to another official's violation of a prisoner's rights may be liable if the former "had a reasonable opportunity to intervene and simply refused to do so").

46

investigate his complaints alleging his credits were improperly computed).

Because in all contexts, including the grievance context, liability for failing to correct an ongoing constitutional violation or avert an impending one necessarily requires that there be an opportunity to act, grievances about past, complete violations that an official cannot stop or prevent do not give rise to liability. *See George v. Smith*, 507 F.3d 605, 609-10 (7th Cir. 2007) (determining that prison officials personally participate by failing to respond to a known and continuing deprivation, but not by denying a grievance alleging misconduct that has already transpired).

However, an official need not personally have the authority to correct a violation for liability to attach to her failure to act in response to a grievance. The official personally participates so long as she fails to take further action within her authority and instead disregards an ongoing deprivation. *See, e.g.*, *Walker v. Aranas*, No. 3:16-cv-00455-MMD-WGC, 2018 WL 6929247, at *8-9 (D. Nev. Dec. 4, 2018), *report and recommendation adopted*, 2019 WL 95772 (D. Nev. Jan. 3, 2019).

47

To be clear, while denying a grievance itself does not constitute personal participation,[18] failing to take corrective action in the face of notice of an ongoing violation does. A grievance can provide that notice, and a denial can serve as evidence that the official failed to respond. *See Colwell*, 763 F.3d at 1070 (holding prison medical director participated in failure to address prisoner's medical need based on denial of treatment prisoner had requested through grievance process); *Snow*, 681 F.3d at 989-90 (same, but where grievance was addressed to other officials from whom medical director learned of prisoner's need).

### B. Deal had the authority to properly apply Chaziza's credits to his parole eligibility date but willfully declined to do so, making Deal a participant in the deprivation.

As head of the NDOC's Offender Management Division, which manages prisoners' sentences, Deal was in charge of the calculation and

---

[18] Because prisoners ordinarily have no liberty interest arising out of a grievance process, a prison official's decision in handling a prisoner grievance cannot, in and of itself, amount to a due process violation. *See Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003); *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) ("[A] denial of a grievance, *by itself without any connection to the violation of constitutional rights alleged by plaintiff*, does not establish personal participation under § 1983." (emphasis added)).

classification of all sentences for prisoners in NDOC custody. (*See* 2-ER-103, 181.) Thus, when he received Chaziza's second-level grievance notifying him that Chaziza's minimum sentence and parole eligibility date had not been recalculated pursuant to *Vonseydewitz*, he unquestionably had the authority to correct the error.[19] (*See id.*) His refusal to do so therefore constituted personal participation in the violation of Chaziza's due process rights. *See Colwell*, 763 F.3d at 1070 (holding prison medical director personally participated in violation of prisoner's rights by refusing to authorize important surgery, the need for which was brought to director's attention through grievance process); *Snow*, 681 F.3d at 989-90 (same). Indeed, Deal had greater authority to correct these errors than did anyone else (*see* 2-ER-103, 181); if his refusal to do so did not rise to the level of personal participation in the deprivation of Chaziza's rights, nobody can be said

---

[19] In their Motion for Summary Judgment, Defendants argued that Sandie and Stammerjohn did not personally participate because they "merely respond[ed] to Chaziza's grievances," but made no such argument as to Deal. (*See* 2-ER-113, 122.) Rather, they argued that Deal did not participate because he was not on notice of Chaziza's entitlement to expedited parole eligibility until the state habeas court issued its order. (*Id.*) This reflects a concession that Deal indeed possessed the authority to resolve the problem.

49

to have participated. Despite his position and responsibility, however, Deal took no action, making him liable for the violation.

### C. Sandie and Stammerjohn failed to alert NDOC officials to the error in Chaziza's parole eligibility calculations, making them participants in the deprivation.

Sandie and Stammerjohn also personally participated in the deprivation of Chaziza's liberty interest in parole consideration by failing to follow up on the minimum sentence and parole eligibility issues raised in Chaziza's grievances. (2-ER-144, 149.) Their responses to the grievances show they understood both the issues Chaziza raised relating to the calculation of his minimum sentence and the implications of the *Vonseydewitz* decision for prisoners in Chaziza's position. (*Id.*) Yet, instead of resolving the error themselves or escalating it for correction, they took no further action and denied the grievances.

In this respect, Sandie and Stammerjohn's conduct parallels that of two defendants in *Walker*. There, after a prisoner was not provided a wheelchair that a doctor had ordered he receive, he filed multiple grievances requesting one. 2018 WL 6929247, at *1-2. Despite the contentions of two nurses who denied his grievances that they could not

50

have personally participated because they lacked the authority to order him a wheelchair, the court found that they had indeed participated by refusing to act despite their awareness of the prisoner's need. *Id.* at \*8. Like the nurses in *Walker*, Sandie and Stammerjohn were made aware of the NDOC's calculation errors through the grievance process yet elected to do nothing. (2-ER-144, 149.) Their inaction perpetuated the deprivation of Chaziza's liberty interest in parole consideration and constituted personal participation in the violation, giving rise to liability.

# CONCLUSION

For the foregoing reasons, the summary judgment for Defendants should be reversed. Further, the Court should remand with instructions that the district court grant partial summary judgment on liability to Chaziza and then proceed to a trial on damages.

November 13, 2020

**HORVITZ & LEVY LLP**
  BARRY R. LEVY
  EMILY V. CUATTO
**KAYE, MCLANE, BEDNARSKI & LITT, LLP**
  CAITLIN S. WEISBERG
**UCLA SCHOOL OF LAW NINTH CIRCUIT APPELLATE ADVOCACY PRISONERS' RIGHTS CLINIC**
  AARON LITTMAN
  ILSE M. GOMEZ
  BENJAMIN S. LEVINE


By: _____ s/Emily V. Cuatto _____


Attorneys for Plaintiff-Appellant
**Ahud Chaziza**

52

## STATEMENT OF RELATED CASES

Appellant is unaware of any related cases.

**UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

**Form 8. Certificate of Compliance for Briefs**

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** | 19-17506

I am the attorney or self-represented party.

**This brief contains** | 10,290 | **words**, excluding the items exempted

by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R.

App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

◉ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

○ is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one):*

○ it is a joint brief submitted by separately represented parties;

○ a party or parties are filing a single brief in response to multiple briefs; or

○ a party or parties are filing a single brief in response to a longer joint brief.

○ complies with the length limit designated by court order dated [          ].

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | s/Emily V. Cuatto    **Date** | November 13, 2020

*(use "s/[typed name]" to sign electronically-filed documents)*

Feedback or questions about this form? Email us at forms@ca9.uscourts.gov

**Form 08**                                                          *Rev. 12/01/2018*