# No. 19-17506

### IN THE
# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

**AHUD CHAZIZA,**
*Plaintiff-Appellant,*

*v.*

**STAMMERJOHN, Caseworker; et al.,**
*Defendants-Appellees.*

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR NEVADA, RENO
MIRANDA M. DU, DISTRICT JUDGE • CASE NO. 3:17-CV-00247-MMD-WGC

# APPELLANT'S PRO BONO REPLY BRIEF

**HORVITZ & LEVY LLP**
BARRY R. LEVY
EMILY V. CUATTO
3601 WEST OLIVE AVENUE, 8TH FLOOR
BURBANK, CALIFORNIA 91505-4681
(818) 995-0800

**MCLANE, BEDNARSKI & LITT, LLP**
CAITLIN S. WEISBERG
975 EAST GREEN STREET
PASADENA, CALIFORNIA 91106
(626) 844-7660

**UCLA SCHOOL OF LAW**
**NINTH CIRCUIT APPELLATE ADVOCACY**
**PRISONERS' RIGHTS CLINIC**
AARON LITTMAN
ILSE M. GOMEZ (CERTIFIED LAW STUDENT)
BENJAMIN S. LEVINE (CERTIFIED LAW STUDENT)
385 CHARLES E. YOUNG DRIVE EAST
1242 LAW BUILDING, ROOM 3472
LOS ANGELES, CALIFORNIA 90095
(310) 825-9562

ATTORNEYS FOR PLAINTIFF-APPELLANT
**AHUD CHAZIZA**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................iii

INTRODUCTION .............................................................................. 1

ARGUMENT ..................................................................................... 4

I. Many of Defendants' arguments are premised on issues not raised by, and unrelated to, Chaziza's appeal. ............................... 4

    A. This appeal concerns whether Chaziza was denied proper application of hundreds of credits that he undisputedly accrued during his second sentence; the separate question of whether Chaziza was entitled to eighty-five additional days of credit toward his first sentence has no bearing on that issue. ................................... 4

    B. *Heck* does not apply to, much less bar, the claim at issue in this appeal. ............................................................. 8

    C. Defendants' arguments about prohibitions on "retroactive parole" under Nevada habeas law have no relevance to this damages action. ........................................ 11

II. Nevada prisoners have a protected liberty interest in parole eligibility, and this interest forms the basis of Chaziza's due process claim. ................................................................................ 14

    A. The State of Nevada, through legislative enactment, created a protected liberty interest in parole eligibility. Caselaw provides the relevant analytical framework but is not the "source" of the claimed liberty interest. ......... 14

        1. *Greenholtz* and *Allen* provide the framework for analyzing the existence of a protected liberty interest in the parole context. ...................................... 14

2. Under the *Greenholtz/Allen* framework, Nevada statutes create a protected liberty interest in parole eligibility. ........................................... 16

3. The protected liberty interest in parole eligibility exists despite Nevada law not creating a protected liberty interest in parole release. ............... 18

B. Defendants rely on district court decisions that repeat the same legal errors as the district court's decision here. .................................................................. 21

III. Defendants' refusal to adhere to Nevada law violated Chaziza's substantive and procedural due process rights. ........... 24

A. Because Defendants were aware of their legal obligation to properly calculate Chaziza's parole eligibility date as of 2015, their knowing failure to do so violated his right to substantive due process. ................. 24

B. By declining to address Chaziza's procedural due process claim raised in the Opening Brief, Defendants have conceded the issue. .................................................... 31

IV. Defendants are not entitled to qualified immunity. ..................... 32

A. Qualified immunity is unavailable where the unlawfulness of official conduct is clearly established. ........ 32

B. Defendants do not challenge the clarity of Chaziza's federal due process right. .................................................... 34

C. At all relevant times, it was clear under Nevada law that Chaziza was entitled to section 209.4465(7)(b)'s benefit. ................................................................................. 36

CONCLUSION ........................................................................................ 41

CERTIFICATE OF COMPLIANCE ...................................................... 42

ii

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*A.M. v. Holmes,*
830 F.3d 1123 (10th Cir. 2016)..........................................................33

*Alexander v. Perrill,*
916 F.2d 1392 (9th Cir. 1990).....................................................30, 31

*Anderson v. Creighton,*
483 U.S. 635 (1987)..........................................................................39

*Anselmo v. Bisbee,*
396 P.3d 848 (Nev. 2017)..........................................................*passim*

*Barnacascel v. Mont. Dep't. of Corrs.,*
103 F. App'x 195 (9th Cir. 2004).......................................................37

*Board of Pardons v. Allen,*
482 U.S. 369 (1987).................................................................*passim*

*Brooks v. George County,*
84 F.3d 157 (5th Cir. 1996)..............................................................33

*Carlo v. City of Chino,*
105 F.3d 493 (9th Cir. 1997).............................................................33

*Collins v. City of Harker Heights,*
503 U.S. 115 (1992)..........................................................................31

*County of Sacramento v. Lewis,*
523 U.S. 833 (1998)..........................................................................30

*Davis v. Scherer,*
468 U.S. 183 (1984)..........................................................................33

*Drummond ex rel. Drummond v. City of Anaheim,*
343 F.3d 1052 (9th Cir. 2003)..........................................................39

*Elder v. Holloway*,
  510 U.S. 510 (1994)...............................................................33

*F.E. Trotter, Inc. v. Watkins*,
  869 F.2d 1312 (9th Cir. 1989)...............................................33

*Galanti v. Nev. Dep't of Corrs.*,
  No. 2:19-cv-01044-GMN-EJY, 2020 WL 6321810 (D. Nev.
  Oct. 27, 2020) ........................................................ 21, 22, 23

*Greenawalt v. Ricketts*,
  943 F.2d 1020 (9th Cir. 1991)...............................................32

*Greenholtz v. Inmates of Nebraska Penal & Correctional
  Complex*,
  442 U.S. 1 (1979)................................................................ *passim*

*Haygood v. Younger*,
  769 F.2d 1350 (9th Cir. 1985)...............................................31

*Heck v. Humphrey*,
  512 U.S. 477 (1994)....................................... 5, 8, 9, 10, 11

*Hope v. Pelzer*,
  536 U.S. 730 (2002)...............................................................39

*Johnson v. Dir., Nev. Dep't. of Prisons*,
  774 P.2d 1047 (Nev. 1989)....................................................11

*Kisela v. Hughes*,
  138 S. Ct. 1148 (2018)................................................... 39, 40

*LaForge v. State, Univ. & Cmty. Coll. Sys.*,
  997 P.2d 130 (Nev. 2000)......................................................26

*McQuillion v. Duncan*,
  306 F.3d 895 (9th Cir. 2002)............................................ 15, 35

*Miller v. Or. Bd. of Parole & Post-Prison Supervision*,
  642 F.3d 711 (9th Cir. 2011)..................................... *passim*

iv

*Moor v. Palmer*,
603 F.3d 658 (9th Cir. 2010)............................................ 18, 20, 23, 24

*Nall v. Williams*,
834 F. App'x 403 (9th Cir. 2021)................................................ 23, 24

*Nall v. Williams*,
No. 3:18-cv-00281-RCJ-WGC, 2019 WL 11544497 (D. Nev.
Sept. 12, 2019) ......................................................................................23

*Nelson v. Mahoney*,
12 P.3d 429 (Mont. 2000)....................................................................37

*Niergarth v. Warden*,
768 P.2d 882 (Nev. 1989) .............................................................. 11, 12

*Patrizi v. Huff*,
690 F.3d 459 (6th Cir. 2012)...............................................................38

*Prison Legal News v. Lehman*,
397 F.3d 692 (9th Cir. 2005)...............................................................37

*Reynolds v. Wolff*,
916 F. Supp. 1018 (D. Nev. 1996).......................................................17

*Rodriguez v. Crawford*,
No. 3:04-cv-297-RLH-RAM, 2008 WL 686866 (D. Nev.
Mar. 10, 2008) ......................................................................................17

*Rodriguez v. Williams*,
No. 2:19-cv-00726-GMN-VCF, 2020 WL 209311 (D. Nev.
Jan. 13, 2020)......................................................................... 21, 22, 23

*Rogers v. Pendleton*,
249 F.3d 279 (4th Cir. 2001)...............................................................38

*Safford Unified Sch. Dist. No. 1 v. Redding*,
557 U.S. 364 (2009)..............................................................................36

*Sandin v. Conner*,
515 U.S. 472 (1995)...................................................... 15, 16, 22, 36

v

*Sayles v. Nevada,*
   No. 2:18-cv-01007-GMN-VCF, 2020 WL 5805493 (D. Nev.
   Sept. 28, 2020) ...................................................................................22

*State v. Bandics,*
   805 P.2d 66 (Nev. 1991) ....................................................................33

*Sunshine Anthracite Coal Co. v. Adkins,*
   310 U.S. 381 (1940).............................................................................26

*Swarthout v. Cooke,*
   562 U.S. 216 (2011)....................................................................... 16, 23

*Tolan v. Cotton,*
   572 U.S. 650 (2014)....................................................................... 32, 39

*United States v. Defoor,*
   625 F. App'x 784 (9th Cir. 2015)......................................................32

*United States v. Martinez,*
   837 F.2d 861 (9th Cir. 1988).............................................................33

*Vazquez v. County of Kern,*
   949 F.3d 1153 (9th Cir. 2020)...........................................................39

*Vonseydewitz v. Legrand,*
   131 Nev. 1360, 2015 WL 3936827 (2015) ................................. *passim*

*Wilkinson v. Dotson,*
   544 U.S. 74 (2005)......................................................................... 9, 10

*Williams v. State Department of Corrections,*
   402 P.3d 1260 (Nev. 2017) ........................................................ *passim*

*Wilson v. Layne,*
   526 U.S. 603 (1999)............................................................................37

*Wolff v. McDonnell,*
   418 U.S. 539 (1974)............................................................................30

vi

*Young v. Williams,*
  No. 2:11-cv-01532-KJD-PAL, 2012 WL 1984968 (D. Nev.
  June 4, 2012) ................................................................................ 16

## Statutes

42 U.S.C. § 1983 ..................................................... 9, 10, 11, 13, 32, 39

Nevada Revised Statutes
  § 213.131 ................................................................................ 16, 21
  § 213.131(1)(a) ........................................................................ 20, 33
  § 213.131(1)(b) .............................................................................. 20
  § 213.140 ...................................................................................... 16
  § 213.140(1) .................................................................................. 20
  § 209.4465 ................................................................................. 5, 17
  § 209.4465(1) ................................................................................ 33
  § 209.4465(1) (2003) ....................................................................... 6
  § 209.4465(7) ........................................................... 6, 10, 12, 21
  § 209.4465(7)(b) ..................................................................... *passim*
  § 209.4465(8) .................................................................................. 6
  § 213.10705 (1995) ........................................................................ 20

## Rules

Nev. R. App. P. 36(c)(2) ............................................................ 26, 38

## Miscellaneous

Assemb. B. 510, § 5, 2007 Leg., 74th Sess. (Nev. 2007) ................... 5, 6

Nev. Sup. Ct. Internal Operating Procs. R. 12(c) (June 1,
  2013) ........................................................................................... 37

# APPELLANT'S PRO BONO REPLY BRIEF

## INTRODUCTION

In his Opening Brief, Plaintiff Ahud Chaziza establishes that Defendants—Nevada Department of Corrections ("NDOC") officials— knowingly failed to calculate his parole eligibility date in accordance with Nevada law, despite his repeated grievances alerting them to this obligation, and that this violated Chaziza's due process rights. Defendants' Answering Brief rests on several fundamental misunderstandings of what this appeal is about and consequently fails to engage persuasively, if at all, with most of Chaziza's arguments, even while deeming them "compelling and well researched." (AB 3.) For example, the Opening Brief explains that prisoners like Chaziza have a protected liberty interest in parole eligibility and that the district court's contrary conclusion was based on several legal errors, including the application of a standard that this Court has expressly held does not apply in the parole context. Yet, the Answering Brief simply repeats the district court's erroneous reasoning without actually responding to Chaziza's arguments about why it was wrong.

1

When Defendants do engage with Chaziza's arguments, they do not dispute that by the time Chaziza finally received his parole hearing, it was more than two years overdue, representing a years-long deprivation of his protected liberty interest in parole eligibility. Rather, they argue that the standard for a due process violation cannot be met—or that they are entitled to qualified immunity—because they did not, and could not, know they were violating Chaziza's right to a timely parole hearing by failing to apply his statutory credits to his minimum term until 2017, when the Nevada Supreme Court issued its published decision so stating in *Williams v. State Department of Corrections*, 402 P.3d 1260 (Nev. 2017). Putting aside that Defendants respond only to Chaziza's substantive due process argument and say nothing in response to his procedural due process argument, Defendants ignore the fact that they actually learned how to properly calculate the parole eligibility date for prisoners like Chaziza in 2015—two years before *Williams*, and before the parole hearing Chaziza should have received in 2016—when the Nevada Supreme Court decided *Vonseydewitz v. Legrand*, 131 Nev. 1360, 2015 WL 3936827 (2015) (unpublished table

2

decision). That earlier case, which held exactly the same thing as *Williams*, gave Defendants all the direction they needed.

To get around the fact that *Vonseydewitz* confirmed Defendants' legal obligations under the relevant Nevada statute in 2015, Defendants have repeatedly claimed that they understood that decision, which was unpublished, not to apply to any prisoners other than the petitioner in that one case. However, the NDOC respondents—via the Attorney General's office that also represents Defendants in this appeal—argued *precisely the opposite* in their repeated efforts to have *Vonseydewitz* reconsidered, recognizing that, absent reconsideration, the NDOC would have to apply that case's holding to all similarly situated prisoners. In response, the full Nevada Supreme Court issued an order expressly confirming that the NDOC was required to recalculate all eligible sentences in accordance with *Vonseydewitz*, leaving no doubt as to its legal obligations.

By knowingly refusing to properly apply Chaziza's credits toward his parole eligibility date, despite his repeated grievances informing them of his legal entitlement, Defendants willfully and arbitrarily delayed his opportunity to receive a parole hearing for more than two

3

years. This Court should reverse the summary judgment order and remand this case for a damages trial to compensate Chaziza for Defendants' manifest violations of his due process rights.

## ARGUMENT

**I.**  **Many of Defendants' arguments are premised on issues not raised by, and unrelated to, Chaziza's appeal.**

**A.**  **This appeal concerns whether Chaziza was denied proper application of hundreds of credits that he undisputedly accrued during his second sentence; the separate question of whether Chaziza was entitled to eighty-five additional days of credit toward his first sentence has no bearing on that issue.**

Although conflated by the Answering Brief, Chaziza's complaint in the district court contained two counts—"Count I" and "Count II"—which concerned *different* credit calculation errors by the NDOC Defendants, relating to *different* groups of credits, accrued during two *different* (consecutive) sentences.

In Count I, Chaziza alleged that he *did not receive* eighty-five specific credits that he should have received during his first consecutive sentence, for the period between October 2006 and June 2007. (2-ER-84–89.) Receiving these credits would have caused his first consecutive sentence (which expired in 2014) to end eighty-five days earlier than it

did.[1] (*Id.* at 89.) This alleged deprivation impacted both of Chaziza's two sentences; had he received the credits, his first sentence would have ended eighty-five days earlier, and, as a result, his second sentence would have started eighty-five days earlier, ended eighty-five days earlier, and had a parole eligibility date that was eighty-five days earlier. (*See id.*) The habeas court dismissed Chaziza's eighty-five-day claim as moot because his first sentence had already expired, (AOB 19; 2-ER-218), and the district court below held that Chaziza's eighty-five-day claim was barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), (AOB 24 n.11; 1-ER-29–30). Chaziza abandoned the eighty-five-day claim on appeal. (AOB 24 n.11.) Thus, whether Chaziza was entitled to eighty-five days of additional credit on his first consecutive sentence (Count I) is no longer at issue in this case in any respect.

Rather, this appeal is limited to Count II. In Count II, Chaziza alleged that the hundreds of statutory credits he undisputedly accrued *during his second consecutive sentence* starting in April 2014, although

---

[1] Chaziza alleged that he was owed these credits pursuant to the 2007 amendments to section 209.4465 of the Nevada Revised Statutes, which increased statutory credits from ten days for each month served to twenty days for each month served. Assemb. B. 510, § 5, 2007 Leg., 74th Sess. (Nev. 2007) ("A.B. 510"); AOB 5 n.2.

received and applied by the NDOC defendants to the *maximum term* of his second consecutive sentence for purposes of determining his release date, were *not* counted against the *minimum term* of that sentence for purposes of determining his parole eligibility date as required by section 209.4465(7) and *Vonseydewitz*.[2] 2-ER-90–94; *see* Nev. Rev. Stat. § 209.4465(1) (2003). With regard to the Count II credits, the habeas court *granted* Chaziza's claim, leading to a recalculation of Chaziza's minimum sentence, which showed that he was deprived of over two years of parole eligibility. (AOB 21; 2-ER-168–69.)

---

[2] The Answering Brief at times insinuates that Chaziza fell into a category of prisoners who were excluded from receiving credits toward their parole eligibility dates. (AB 9 n.24, 18, 29, 35.) Specifically, the brief references section 209.4465(8), which disqualifies prisoners convicted of certain categories of felonies from receiving credits toward their parole eligibility dates. The Opening Brief makes clear that those exclusions did not apply to Chaziza because subsection (8) of section 209.4465 was added to the statute in 2007 by A.B. 510 and therefore postdated Chaziza's offense. (AOB 18 n.9.) As with Defendants' other misdirected arguments addressed in this section, the references to subsection (8) should be disregarded. Relatedly, the Answering Brief also suggests that Nevada law did not require the application of credits toward minimum sentences prior to the A.B. 510 amendments, (*see* AB 9), but again, this is incorrect. The operative language of section 209.4465(7), which was construed in *Vonseydewitz* and *Williams*, existed prior to A.B. 510, as acknowledged by those decisions. (*See* AOB 8–14.)

Simply put, the Count II credits, which accrued during and pertain exclusively to Chaziza's second consecutive sentence, are the only credits relevant to this appeal. The issues raised here concerning Chaziza's entitlement to proper application of his credits toward the minimum term of his second consecutive sentence are wholly independent of any issues related to Count I, Chaziza's first consecutive sentence, or his abandoned claim that eighty-five additional credits should have been given to him during his first consecutive sentence.

The Answering Brief does not acknowledge these distinctions or the abandonment of Count I, resulting in confusion about which count(s), which sentence(s), and which set of statutory credits are implicated in the appeal. Indeed, the vast majority of the arguments made in the Answering Brief, which repeatedly reference the eighty-five credits, Chaziza's "expired" first consecutive sentence, the "front-end" of his second consecutive sentence,[3] and/or Count I of the civil rights

---

[3] Defendants mistakenly believe that the "front-end" application of credits on Chaziza's second consecutive sentence is at issue. (AB 4, 6, 7, 11, 13, 22–23, 41, 49.) Chaziza's claim is that he was entitled to the application of credits he accrued throughout his second consecutive sentence *toward the minimum term of that second sentence* for purposes of parole eligibility, not that he was entitled to application of credits *on*

(continued . . .)

complaint, (*see* AB 1–2, 4, 6–8, 10–13, 15–19, 22, 25–26, 31–32, 34–35, 37, 41–42, 49–51), rest on the incorrect assumption that Defendants' miscalculation of Chaziza's parole eligibility date for his second consecutive sentence—challenged in Count II—traces back to his claim that eighty-five days should have been subtracted from his first consecutive sentence. As explained above (and in the Opening Brief), it simply does not. Any of Defendants' arguments premised on that assumption are inapposite and should be disregarded.

### B. *Heck* does not apply to, much less bar, the claim at issue in this appeal.

Related to their confusion about which claim is at issue in this appeal, Defendants repeatedly argue that Chaziza's claims, either or both, are *Heck*-barred. (AB 1, 2, 22–26, 42.) As stated above, the district court did hold that *Count I* was *Heck*-barred—a holding not challenged in this appeal. (1-ER-29–30.) But Defendants never argued below that Chaziza's Count II claim was *Heck*-barred, and the district court never

---

*the front end of that sentence* to advance the start date of his second (minimum-maximum) sentence. Any arguments about credits applied to the front end of his second consecutive sentence are only relevant to Count I, which has been abandoned.

8

considered or ruled on such an issue. (AOB 19–20; 1-ER-30–32; 2-ER-118–120.) And rightly so. Chaziza's Count II claim plainly falls outside *Heck*'s purview.

"*Heck* specifies that a prisoner cannot use [42 U.S.C. ]§ 1983 to obtain damages where success would necessarily imply the unlawfulness of a (not previously invalidated) conviction or sentence." *Wilkinson v. Dotson*, 544 U.S. 74, 81 (2005). However, *Heck* does not apply where the plaintiff's claim, if successful, would not impugn the duration of his confinement or require speedier release, or where a plaintiff has already invalidated his sentence through habeas corpus (or similar postconviction remedies). *Id.* at 81–82. Chaziza's Count II claim overcomes both hurdles: Success would not necessarily imply the invalidity of his sentence and he successfully obtained habeas corpus relief in state court.

First, again, Chaziza's Count II claim is that he would have had an earlier parole eligibility date if the NDOC had properly applied the credits he received during his second consecutive sentence to that sentence's minimum term. Although Chaziza certainly hoped to be paroled at the earliest possible time, earlier parole consideration is no

guarantee of earlier release from custody. Therefore, success on the due process claim advanced in Count II would not mean that parole necessarily would have been granted at any point prior to the expiration of Chaziza's sentence. As the Supreme Court has held, claims relating to "parole eligibility" and "parole suitability" do not "necessarily spell speedier release" or "necessarily imply the invalidity of [a] sentence," so they are not barred under *Heck*. *Id.* at 82 (citation omitted).

Second, Chaziza successfully sought and obtained habeas corpus relief on his Count II parole-eligibility claim from the Eleventh Judicial District Court of Nevada. The habeas court ordered the NDOC to properly apply Chaziza's credits to his minimum sentence as required by section 209.4465(7), resulting in recalculation of his parole eligibility date to a date more than two years prior and an immediate hearing. (AOB 21–22.) In other words, the unlawfulness of the NDOC's miscalculation of the minimum term of Chaziza's second consecutive sentence was determined in an appropriate postconviction proceeding, clearing the way under *Heck* for Chaziza's § 1983 claim for damages.

*Heck* was only ever discussed by the district court in relation to Count I, and it certainly does not bar Chaziza's Count II claim in this

appeal. To the extent that Defendants' *Heck* arguments are directed to Count I, they should be disregarded, and to the extent they are directed to Count II, they should be rejected.

### C. Defendants' arguments about prohibitions on "retroactive parole" under Nevada habeas law have no relevance to this damages action.

In various contexts throughout the Answering Brief, Defendants refer to "retroactive parole," "retroactive application of credits," or the (non) retroactivity of the *Williams* decision. (*See, e.g.*, AB 2, 8, 15, 17, 26, 30–31, 36-37, 42–43, 50.) It is unclear why Defendants believe retroactivity has any relevance to Chaziza's § 1983 claim. In fact, retroactivity concepts are irrelevant here.

Where Defendants cite cases that address the concept of retroactivity, those cases refer to the unremarkable proposition that a habeas court cannot order a parole hearing, or otherwise grant habeas corpus relief, for a prisoner whose sentence has already expired or who has already been denied parole. (AB 8, 15, 17, 30–31, 51, citing *Williams*, 402 P.3d at 1262, 1265 n.7, *Niergarth v. Warden*, 768 P.2d 882, 883–84 (Nev. 1989), and *Johnson v. Dir., Nev. Dep't of Prisons*, 774 P.2d 1047, 1049 (Nev. 1989).) At the habeas stage, this was no

11

impediment for Chaziza, because when he sought habeas relief for the miscalculation of his parole eligibility date, he had neither expired his second consecutive sentence nor been afforded parole consideration.[4] Accordingly, his habeas petition was granted, and his parole eligibility date was recalculated. (AOB 21; 2-ER-168–69.)

Similarly, this recalculation ordered by the habeas court was required by section 209.4465(7), as construed by *Vonseydewitz* and *Williams*, and was not dictated by whether either of those decisions was "retroactive." In other words, *Williams* did not create a new right to credits or a new right to the application of credits that did not already exist throughout Chaziza's entire sentence. Rather, *Williams* simply recognized—as *Vonseydewitz* did two years earlier—that section 209.4465(7), which existed for years prior to either decision, required the application of credits to a prisoner's minimum term for purposes of

---

[4] By contrast, Chaziza's eighty-five-day claim, alleging that he was deprived of credits during his first consecutive sentence, was denied at the habeas stage based on *Niergarth* because he filed his habeas petition after the expiration of his first consecutive sentence. (2-ER-218–19.) Many, but not all, of Defendants' references to retroactivity arise alongside arguments regarding Count I and the eighty-five-day claim (*see, e.g.*, AB 37, 42), and should be disregarded for the reasons explained *supra*, Section I.A.

parole eligibility. Under both decisions, prisoners then serving minimum-maximum sentences were entitled to recalculation of their parole eligibility dates.

However, even if Chaziza had already expired his sentence or received parole consideration, such that "retroactive" habeas relief would have been unavailable, that would not matter in this civil action because Chaziza is seeking damages, not equitable relief. Chaziza was wrongfully denied parole consideration for over two years. For that completed violation of his federal constitutional right to due process, he now seeks damages, asserting his right to compensatory relief under § 1983. He does not seek—nor is this past violation any longer susceptible to—equitable relief of any kind, much less a retroactive grant of parole or retroactive parole consideration. To whatever extent his request for compensatory damages would redress his harm "retroactively," that is precisely what compensatory damages are designed to do, and it is not improper under any of the authorities Defendants cite.

**II. Nevada prisoners have a protected liberty interest in parole eligibility, and this interest forms the basis of Chaziza's due process claim.**

    **A. The State of Nevada, through legislative enactment, created a protected liberty interest in parole eligibility. Caselaw provides the relevant analytical framework but is not the "source" of the claimed liberty interest.**

        **1. *Greenholtz* and *Allen* provide the framework for analyzing the existence of a protected liberty interest in the parole context.**

Chaziza's Opening Brief explains the holdings in *Greenholtz v. Inmates of Nebraska Penal & Correctional Complex*, 442 U.S. 1 (1979), and *Board of Pardons v. Allen*, 482 U.S. 369 (1987). In these cases, the Supreme Court held that, in the parole context, courts should look to statutory language to determine whether a protected liberty interest exists. AOB 28–29; *Greenholtz*, 442 U.S. at 12, 16; *Allen*, 482 U.S. at 370–71, 377–78. Specifically, to determine if a state statute creates a liberty interest, courts should carefully analyze the statute's language, searching for provisions of entitlement with or without conditions, as well as for use of mandatory words such as "shall." AOB 29; *Greenholtz*, 442 U.S. at 11–12; *Allen*, 482 U.S. at 373, 376–78.

14

The Ninth Circuit has confirmed that *Greenholtz/Allen* remains the appropriate test for determining if a liberty interest exists in parole-related cases. In *Sandin v. Conner*, 515 U.S. 472, 474 (1995), the Supreme Court established a different test for determining whether internal prison regulations give rise to liberty interests. As explained in the Opening Brief, (AOB 38–39), the Ninth Circuit expressly held in *McQuillion v. Duncan*, 306 F.3d 895, 903 (9th Cir. 2002), that *Sandin* did not change the appropriate analysis in the parole context and that *Greenholtz/Allen* continues to apply to parole-related liberty interests. More recently, in *Miller*, the Ninth Circuit again applied *Greenholtz/Allen* to recognize the existence of a protected liberty interest in parole eligibility specifically. *Miller v. Or. Bd. of Parole & Post-Prison Supervision*, 642 F.3d 711, 714 (9th Cir. 2011).

Defendants make passing reference to *Sandin* in the Answering Brief, (AB 20, 32), simply assuming it applies and failing to acknowledge, much less address, the key distinctions that the Ninth Circuit made in *McQuillion* and *Miller*. Defendants do not offer any basis for disregarding this clear and binding precedent, and they fail to rebut Chaziza's argument that the district court erred in applying

15

*Sandin* to assess whether Chaziza had a protected liberty interest. Because the liberty interest at issue here is in parole eligibility, the *Greenholtz/Allen* test, not *Sandin*, applies.

> **2. Under the *Greenholtz/Allen* framework, Nevada statutes create a protected liberty interest in parole eligibility.**

The Opening Brief demonstrates that, under the correct *Greenholtz/Allen* framework, Nevada law clearly creates a protected liberty interest in parole eligibility. (AOB 30–33.) Specifically, it explains that sections 213.131 and 213.140 entitle prisoners to mandatory parole consideration based on the application of sentencing credits, thus satisfying the *Greenholtz/Allen* test. (*See* AOB 30–31 (citing *Miller*, 642 F.3d at 716).) Although Defendants do not respond to Chaziza's arguments regarding the proper legal standard, they concede that "the cited statutes do mandate that the NDOC calculate a prisoner's parole eligibility date for the Parole Board to consider when the inmate is eligible."[5] (AB 34.) Therefore, Defendants effectively

---

[5] Defendants assert in conclusory fashion, similar to the district court opinion below, that the NDOC's misapplication of the statutes was merely an error of state law and not a due process violation. (*See* AB 31, 41–42 (citing *Swarthout v. Cooke*, 562 U.S. 216, 222 (2011), and *Young*

(continued . . .)

16

admit that Nevada law creates a protected liberty interest in parole eligibility to which prisoners like Chaziza are entitled.

At several points, Defendants suggest that section 209.4465 itself must create a liberty interest but does not create one. (AB 31, 35.) However, section 209.4465 does, in fact, create a liberty interest in the accrual of good-time credits and in the application of the accrued credits toward eligibility for parole. AOB 30 n.13 (citing *Reynolds v. Wolff*, 916 F. Supp. 1018, 1023 (D. Nev. 1996) (holding that a parallel Nevada statute related to good-time credits created a liberty interest); *see also Rodriguez v. Crawford*, No. 3:04-cv-297-RLH-RAM, 2008 WL 686866, at *2 (D. Nev. Mar. 10, 2008) ("Prisoners have a protected liberty interest in good time credits received pursuant to Nev. Rev. Stat. § 209.4465.").

---

*v. Williams*, No. 2:11-cv-01532-KJD-PAL, 2012 WL 1984968, at *3 (D. Nev. June 4, 2012)).) But this issue was addressed in the Opening Brief, (AOB 36–37), and Defendants neither acknowledge nor respond to Chaziza's arguments. As previously explained, state law is what creates liberty interests in the parole context, and, accordingly, the violation in this case is not a mere error of state law, but instead a deprivation of Chaziza's constitutionally protected liberty interest.

17

### 3. The protected liberty interest in parole eligibility exists despite Nevada law not creating a protected liberty interest in parole release.

Defendants argue that Chaziza does not have a liberty interest in parole eligibility because Nevada prisoners enjoy no liberty interest in parole itself. (AB 33, 41–43.) Indeed, it is true, and the Opening Brief acknowledges, that there is no liberty interest in *release* on parole.[6] (AOB 31 n.14.) But *Miller* makes clear that a statute can create a liberty interest in parole eligibility, independent of any liberty interest in parole release, and *Anselmo* makes clear that Nevada statutes can and do create liberty interests in parole eligibility, even though Nevada has explicitly disclaimed the creation of a liberty interest in parole

---

[6] Defendants repeatedly cite *Moor v. Palmer*, 603 F.3d 658, 661–62 (9th Cir. 2010), for the proposition that there is no liberty interest in parole or *parole eligibility* under Nevada law. (AB 31, 33, 41, 43.) As discussed in the Opening Brief, *Moor* neither considered nor held anything with respect to *parole eligibility*. (AOB 34–35.) *Moor* applied the *Greenholtz/Allen* standard to Nevada's statute governing parole *release* and determined that the statute's use of non-mandatory language, together with the state's express disclaimer of any intent to create liberty interests with respect to "the release or continuation of a person on parole or probation," meant that prisoners in Nevada have no liberty interest with respect to the grant or revocation of parole. *Moor*, 603 F.3d at 661–62.

18

itself. *Miller*, 642 F.3d at 713, 716; *Anselmo v. Bisbee*, 396 P.3d 848, 852 (Nev. 2017).

Defendants misunderstand the relevance of *Miller* and *Anselmo* to this appeal. Defendants suggest Chaziza cited those cases inaptly as the source of the liberty interest at stake, and they make much of the fact that *Miller* and *Anselmo* did not involve the particular state agency and statutes at issue here. (AB 32–36.) But Chaziza does not claim those cases are the source of his liberty interest; to be sure, neither case addresses the precise liberty interest here. Rather, as explained in detail in the Opening Brief, (AOB 31–36), those cases are relevant because they establish that the district court erred in its analysis of whether the statutes that Chaziza claims are the source of his liberty interest in fact create such an interest.

Specifically, in *Miller*, the Ninth Circuit found that an Oregon statute created a protected liberty interest in parole eligibility because it used mandatory language to require a parole hearing when certain findings were made about a prisoner. *Miller*, 642 F.3d at 715–16. Importantly for present purposes, *Miller* recognized a liberty interest in parole eligibility, regardless of whether there was any accompanying

19

liberty interest in parole release. *Id.* at 713, 716; AOB 32–35. Thus, *Miller* is relevant because it illustrates that this Court has previously recognized that a liberty interest can exist for one even if it does not exist for the other.

Similarly, in *Anselmo*, the Nevada Supreme Court held that certain provisions of Nevada's statutes created a liberty interest in being considered for parole, despite the fact that Nevada law expressly disclaims a right to parole itself. *Anselmo*, 396 P.3d at 852. The Opening Brief cites *Anselmo* because it establishes that Nevada's disclaimer of intent to create a liberty interest in parole *release*, *see Moor*, 603 F.3d at 661–62; Nev. Rev. Stat. § 213.10705 (1995), does not extend to Nevada statutes that use mandatory language with respect to parole *eligibility*. (AOB 31 n.14, 31–32.)

In short, Chaziza relies on the statutes, specifically sections 213.131(1)(a)–(b) and 213.140(1)—not case law—as the source of his liberty interest. (AOB 30–31.) *Miller* and *Anselmo* simply confirm that when state legislatures enact a mandatory entitlement in the parole eligibility context (as Nevada has done here in sections 213.131(1)(a)–(b) and 213.140(1)), they create a constitutionally protected liberty

interest, regardless of the absence and despite the disclaimer of any such interest in parole release itself. The district court erred when it held otherwise.

Indeed, Defendants concede that "*Miller* and *Anselmo* would have been applicable if there was a failure to determine Chaziza's eligibility." (AB 36.) The Defendants failed in just that way: For over two years, as a result of their failure to properly apply Chaziza's credits pursuant to section 209.4465(7), Defendants failed to deem Chaziza eligible for parole and refer him to the parole board for consideration as required by section 213.131. They therefore deprived him of a protected liberty interest.

### B. Defendants rely on district court decisions that repeat the same legal errors as the district court's decision here.

Defendants also observe that "USDC Nevada and state court have declined to award damages for similar claims," citing three unpublished federal district court cases, all issued by a single judge adjudicating the claims of *pro se* plaintiffs, and no Nevada state cases. (AB 39–40 (boldface omitted) (citing *Rodriguez v. Williams*, No. 2:19-cv-00726-GMN-VCF, 2020 WL 209311 (D. Nev. Jan. 13, 2020); *Galanti v. Nev.*

21

*Dep't of Corrs.*, No. 2:19-cv-01044-GMN-EJY, 2020 WL 6321810 (D.
Nev. Oct. 27, 2020); and *Sayles v. Nevada*, No. 2:18-cv-01007-GMN-
VCF, 2020 WL 5805493 (D. Nev. Sept. 28, 2020)).)

The first two of these decisions contain virtually identical
reasoning to the decision on appeal and involve exactly the same errors
of law addressed at length in Chaziza's Opening Brief.[7] The *Rodriguez*
decision erroneously applied *Sandin* rather than *Greenholtz/Allen* to
assess the existence of a protected liberty interest in parole eligibility,
while *Galanti* concluded that there is no protected liberty interest
without expressly acknowledging any analytical framework. *Rodriguez*,
2020 WL 209311, at *3; *Galanti*, 2020 WL 6321810, at *2; AOB 38–41.
Both *Rodriguez* and *Galanti* erroneously concluded, based on the same
inapposite caselaw cited by the district court below, that Nevada law
disclaims a liberty interest not only in release on parole, but also in
eligibility for parole. *Rodriguez*, 2020 WL 209311, at *3; *Galanti*, 2020
WL 6321810, at *2; *see* AOB 33–36. Like the district court below, they

---

[7] *Sayles* considered an equal protection claim and found that the
plaintiff had not established that similarly situated prisoners were
treated differently. *Sayles*, 2020 WL 5805493, at *4. Sayles is not
pertinent to this appeal.

both also misapplied *Swarthout*'s commentary on violations of state law. *Rodriguez*, 2020 WL 209311, at \*3; *Galanti*, 2020 WL 6321810, at \*2; AOB 36–37. There is no indication that the authoring court considered arguments parallel to those made in the Opening Brief, and the opinions, much like the Answering Brief, do not offer any rebuttal to such arguments.

These opinions are part of a string of cases in the District of Nevada that raised claims identical to Chaziza's and were swiftly dismissed based on the same sparse reasoning used by the district court in this case. None of the cases, all litigated by pro se plaintiffs, engaged critically with the substantive legal arguments Chaziza presents in this appeal, including the appropriate standard for determining the existence of a liberty interest (*Greenholtz/Allen*) and the distinction between parole eligibility and parole release (*Miller/Anselmo*). Thus, although other courts have adjudicated identical claims to Chaziza's, including this Court in a recent memorandum disposition,[8] this appeal

---

[8] *Nall v. Williams*, 834 F. App'x 403 (9th Cir. 2021) (affirming *Nall v. Williams*, No. 3:18-cv-00281-RCJ-WGC, 2019 WL 11544497 (D. Nev. Sept. 12, 2019)). In *Nall*, the Court cited *Moor*, 603 F.3d at 661, as holding that "Nevada's statutory parole scheme . . . expressly disclaims

(continued . . .)

23

presents the first opportunity for any court to consider the "compelling and well researched" arguments, (AB 3), presented here for why a protected liberty interest in parole eligibility does exist under Nevada law.

### III. Defendants' refusal to adhere to Nevada law violated Chaziza's substantive and procedural due process rights.

#### A. Because Defendants were aware of their legal obligation to properly calculate Chaziza's parole eligibility date as of 2015, their knowing failure to do so violated his right to substantive due process.

In responding to Chaziza's argument that Defendants violated his substantive due process rights, (AOB 42–44), Defendants do not dispute that knowingly subjecting Chaziza to an "extended deprivation" of a protected liberty interest would amount to a due process violation, (AB 36–39). Instead, their Answering Brief disputes their knowledge, repeatedly asserting that the NDOC employees *could not have known* that section 209.4465(7)(b) applied to prisoners with minimum-

---

any intent to create a liberty interest." 834 F. App'x 403. However, as explained in the Opening Brief and above, *Moor* neither considered nor held anything with respect to *parole eligibility*. (AOB 34–35; *supra* note 6.)

maximum sentences, like Chaziza, until *Williams* was decided in 2017. (*Id.* at 37–38, 49–50.)

However, the *Vonseydewitz* opinion, the NDOC's own statements in briefing to the Nevada Supreme Court after that case was decided, and the Nevada Supreme Court's order explaining its denial of en banc review in *Vonseydewitz* all make plain that the NDOC was, in fact, well aware that section 209.4465(7)(b) applied to prisoners in Chaziza's position in 2015. Accordingly, Defendants knew from the moment Chaziza filed his first grievance in 2016 that they were violating Chaziza's rights under Nevada law by refusing to properly calculate his parole eligibility date.

Defendants deny this by asserting, without citation, that "*Von Seydewitz* [sic] explicitly states it applied only to that case." (AB 38.) However, such a statement appears nowhere in the opinion. *See Vonseydewitz*, 2015 WL 3936827.[9] And no one reading the opinion could reasonably interpret its holding as being case- or fact-specific. Rather,

---

[9] Defendants also assert that "Nevada courts have frequently determined that [*Vonseydewitz*] was meant to interpret the specifics of that case and not a blanket as to all NDOC inmates," but they provide no support for this claim either. (AB 28.)

25

because the decision resolved a purely legal question, interpreting a statute that governs parole-eligibility calculations for a broad category of prisoners, its reasoning makes clear that section 209.4465(7)(b) would apply the same way to any prisoner who was similarly situated. *See id.* at *2 (explaining that the NDOC's position that section 209.4465(7)(b) did not apply to prisoners with minimum-maximum sentences was untenable because accepting it would mean the provision did not actually apply to any prisoners at all, "render[ing it] nugatory in its entirety from its inception"). The opinion's unpublished status does not change this fact, as a single provision of sentencing-credit law could not mean one thing as applied to the named petitioner and another with respect to all other similarly situated prisoners.[10]

---

[10] Moreover, although unpublished Nevada Supreme Court opinions ordinarily "do[ ] not establish mandatory precedent," that general rule does not apply to the parties in the case, and their privies, who are subject to issue and claim preclusion. Nev. R. App. P. 36(c)(2). Accordingly, regardless of its unpublished status, *Vonseydewitz* was binding on the NDOC and its employees and agents. *See LaForge v. State, Univ. & Cmty. Coll. Sys.*, 997 P.2d 130, 133 (Nev. 2000) (articulating the test for issue preclusion under Nevada law); *Sunshine Anthracite Coal Co. v. Adkins*, 310 U.S. 381, 402 (1940) ("There is privity between officers of the same government . . . .").

Further, Defendants' Answering Brief entirely fails to address the repeated and emphatic representations the NDOC respondents made to the Nevada Supreme Court regarding *Vonseydewitz*'s applicability to other prisoners. Their petition for panel rehearing stated that "were it permitted to stand, this panel's decision would invalidate the sentence calculations of the majority of Nevada prisoners sentenced in the last 20 years" and would specifically "require recalculation of the sentences of many of Nevada's prisoners." (Mot. for Jud. Notice 12, 24 [Ex. A, at 3, 15], ECF No. 31 (boldface omitted); AOB 10–11.) After rehearing was denied, their petition for rehearing en banc admitted that under *Vonseydewitz*, "all inmates sentenced to a minimum-maximum sentence between 1995 and 2007 were entitled to the application of statutory credits" toward parole eligibility.[11] (Mot. for Jud. Notice 44 [Ex. B, at 16]; AOB 11.)

Similarly, Defendants ignore the fact—likewise noted in the Opening brief—that in rejecting the NDOC's second and final request for reconsideration, the Nevada Supreme Court explicitly agreed that

---

[11] As noted in the Opening Brief, Chaziza was sentenced for crimes committed in 2004. (1-ER-8; AOB 14.)

27

*Vonseydewitz* would broadly affect the sentences of numerous prisoners. (*See* 2-ER-141; AOB 12–13, 43.) In its order denying en banc review, the court articulated specific criteria for identifying those sentences that would be "affected under the panel's reasoning." (2-ER-141; *see* AOB 12.) Chaziza went so far as to attach a copy of this order to his grievances, annotating it to draw Defendants' attention directly to the criteria the court had listed, which Chaziza undisputedly satisfied. (2-ER-141; *see* AOB 12 n.6.)

In light of the foregoing factual record, Defendants' contention that *Vonseydewitz* was somehow insufficient to make them aware of the obligation to apply Chaziza's credits toward his parole eligibility—and that *Williams* "clarif[ied]" that the legal rule announced in *Vonseydewitz* applied to prisoners other than Mr. Vonseydewitz—is without merit.[12] (AB 28.)

Further, even if *Williams* had been the watershed decision Defendants claim—and it was not—their assertion that they promptly complied with it, (AB 37–38), is contradicted by the record. Although

---

[12] The fact that *Williams* did not "clarify[ ]" *Vonseydewitz* is acknowledged by Defendants' own brief, which elsewhere states that "*Williams confirmed Vonseydewitz.*" (AB 29 (emphasis added).)

28

they indicate that *Williams* was finally sufficient to make them aware of their obligation to apply credits toward parole eligibility for prisoners with minimum-maximum sentences, (*see* AB 28–29, 37–38), Defendants did not grant Chaziza's grievance and recalculate his parole eligibility date for months *after Williams* was decided, (2-ER-153, 159–62, 235–36), even though recalculation would entitle him to immediate parole consideration, (2-ER-171), and even though counsel for the NDOC had already conceded in Chaziza's habeas proceeding that "inmates[ ] like Chaziza[ ] were entitled to the application of good-time and statutory credits towards their minimum terms of imprisonment," (2-ER-164). Instead, they waited until expressly ordered to afford Chaziza the long-overdue relief to which they had already agreed he was entitled. (*See* 2-ER-153, 156–57, 159–62, 235–36.) In the months following *Williams*, as in the period of over two years between it and *Vonseydewitz*, Defendants willfully declined to provide Chaziza the proper credit application to which they knew he was entitled.

By refusing to fulfill a statutory obligation to provide Chaziza a timely parole hearing, despite his repeated grievances, Defendants ultimately delayed his opportunity to appear before the Parole Board by

29

more than two years.[13] (*See* 1-ER-9–13, 15; 2-ER-141, 171.) In doing so, Defendants arbitrarily subjected Chaziza to an extended deprivation of his protected liberty interest in parole eligibility, "stand[ing] by idly" and refusing to follow a decision by the Nevada Supreme Court that they knew—and that the NDOC had repeatedly argued—applied to prisoners like him. *Alexander v. Perrill*, 916 F.2d 1392, 1398 (9th Cir. 1990); *see Wolff v. McDonnell*, 418 U.S. 539, 558 (1974) ("The touchstone of due process is protection of the individual against arbitrary action of government."). This knowing indifference to Chaziza's rights under Nevada law represented an "exercise of power without any reasonable justification in the service of a legitimate governmental objective," *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998), and thus amounted to "conscience shocking" conduct in violation of Chaziza's

---

[13] The Nevada Supreme Court released its order denying rehearing en banc in *Vonseydewitz,* including its explanation regarding section 209.4465(7)(b)'s applicability to prisoners in Chaziza's position, on February 19, 2016. (*See* 2-ER-141.) *Williams* was decided on October 5, 2017. *See Williams*, 402 P.3d 1260; AB 38. On November 6, 2017, counsel for the NDOC conceded that Chaziza was entitled to application of credits toward his parole eligibility. (2-ER-163–64.) The NDOC ultimately recalculated Chaziza's parole eligibility date on March 19, 2018, changing it from April 26, 2019 to February 6, 2016. (2-ER-171.)

right to substantive due process, *Collins v. City of Harker Heights*, 503 U.S. 115, 128 (1992).

### B. By declining to address Chaziza's procedural due process claim raised in the Opening Brief, Defendants have conceded the issue.

In his Opening Brief, Chaziza further argued that Defendants violated his right to procedural due process by depriving him of his protected liberty interest in parole eligibility without affording him adequate procedural protections. (AOB 44.) In particular, he argued that because Defendants failed at any point to afford him a hearing or any other procedures by which to evaluate his entitlement to section 209.4465(7)(b)'s benefit, their deprivation abridged his rights under the Due Process Clause. (*See id.* (citing *Haygood v. Younger*, 769 F.2d 1350, 1352–53, 1357–59 (9th Cir. 1985) (en banc), and *Alexander*, 916 F.2d at 1398).)

Although Defendants argue that no such liberty interest existed, (AB 32–36), they do not dispute that if their conduct did deprive Chaziza of a protected liberty interest, it would have violated Chaziza's procedural due process rights. By failing to respond at all to Chaziza's procedural due process claim, Defendants have conceded the violation

31

and waived any argument against it. *See Greenawalt v. Ricketts*, 943 F.2d 1020, 1027 (9th Cir. 1991) (noting that an appellee's "failure to argue" against an opposing argument on appeal amounted to an apparent concession, and accordingly finding for the appellant); *United States v. Defoor*, 625 F. App'x 784, 790 (9th Cir. 2015) (holding that, where an appellant challenged a jury instruction on appeal, the appellee "waived any argument that th[e] instruction was not plainly erroneous by failing to respond to this argument in its answering brief").

## IV.  Defendants are not entitled to qualified immunity.

### A.  Qualified immunity is unavailable where the unlawfulness of official conduct is clearly established.

Courts determining whether an official is entitled to qualified immunity ask (1) "whether the facts . . . 'show the officer's conduct violated a federal right,'" and (2) "whether the right in question 'was clearly established' at the time of the violation." *Tolan v. Cotton*, 572 U.S. 650, 655–56 (2014) (citations omitted). Where an alleged constitutional violation in a § 1983 action involves an underlying issue of state law, the relevant consideration for qualified immunity purposes is whether the federal constitutional right, rather than the state law,

32

was clearly established. *Elder v. Holloway*, 510 U.S. 510, 515 (1994) (citing *Davis v. Scherer*, 468 U.S. 183, 197 (1984)). However, in such cases state law remains relevant because its precise contours may illuminate the scope of the federal right at issue. *Carlo v. City of Chino*, 105 F.3d 493, 501 (9th Cir. 1997); *A.M. v. Holmes*, 830 F.3d 1123, 1140–41 (10th Cir. 2016).

As a threshold point, although qualified immunity may shield "actions taken pursuant to discretionary functions," the defense does not exist for an official's failure to perform ministerial tasks "lend[ing] themselves readily to formulaic determination," such as sentence calculation.[14] *F.E. Trotter, Inc.*, 869 F.2d at 1314–15. In any event, even

---

[14] Here, Defendants had a duty to calculate Chaziza's parole eligibility date correctly under Nevada law. *See* Nev. Rev. Stat. §§ 209.4465(1), 209.4465(7)(b), 213.131(1)(a). Because the relevant statutes "specif[ied] the precise action that the official must take in each instance," this duty was purely ministerial. *F.E. Trotter, Inc. v. Watkins*, 869 F.2d 1312, 1314–15 (9th Cir. 1989) (quoting *Davis*, 468 U.S. at 196 n.14); *see also United States v. Martinez*, 837 F.2d 861, 865–66 (9th Cir. 1988) (finding error in sentence computation was "ministerial"); *State v. Bandics*, 805 P.2d 66, 68 (Nev. 1991) (holding erroneous release of Nevada prisoner due to miscalculation of sentence was "simple, ministerial error"); *Brooks v. George County*, 84 F.3d 157, 164–65 (5th Cir. 1996) (denying qualified immunity on due process claim to sheriff who violated "non-discretionary duty to keep records of work performed by pretrial detainees and to transmit those records to the board of supervisors so

(continued . . .)

if the task of calculating Chaziza's parole eligibility date were not ministerial, qualified immunity does not absolve Defendants of liability here, as explained below.

### B. Defendants do not challenge the clarity of Chaziza's federal due process right.

Defendants' qualified immunity argument does not identify any lack of clarity in federal due process law that might preclude liability. (AB 49–50.) Rather, the vast majority of Defendants' argument involves repeated assertions that, prior to *Williams*, they had no obligation to properly calculate Chaziza's sentence in accordance with section 209.4465(7)(b) and *Vonseydewitz*. (*See id.*) Even in addressing *Williams* and related issues of state law, most of the argument suffers from Defendants' familiar errors regarding Count I, the eighty-five credits, Chaziza's "expired" first sentence, and retroactivity. (*Id.*; *see supra* Part I.) What remains is a cursory statement that even if "*Anselmo* somehow created a liberty interest," it was not decided until 2017. (AB 50.)

---

that [they] can be paid"). For this reason, in addition to those set out below, Defendants are not entitled to qualified immunity.

This last argument is misplaced, however, because, as explained above, Chaziza has never contended that *Anselmo* "created" any liberty interest upon which he relies in this case. (*See* AOB 30–33; *supra* pp. 18–21.) *Anselmo* merely applied federal legal standards concerning the creation of liberty interests in the parole context that were clear for decades following *Greenholtz* and *Allen* and were reaffirmed by the Ninth Circuit in *Miller* and *McQuillion*. *See Anselmo*, 396 P.3d at 850–52; *see also* AOB 31–32. *Anselmo* confirms that the district court below erred in concluding that a liberty interest in parole eligibility may not exist independent of a liberty interest in release on parole. *See Anselmo*, 396 P.3d at 852. But the principle that one does not depend on the other had already been established in *Miller* in 2011. *See Miller*, 642 F.3d at 715–16. Indeed, in *Miller*, the Ninth Circuit clearly established that state statutes using mandatory language to require an official determination of prisoners' parole eligibility create a protected liberty interest. *See id.* For these reasons, the district court's errors regarding Chaziza's liberty interest in parole eligibility do not suggest any lack of clarity in federal law; rather, they were based on a failure to comply with clear Ninth Circuit precedent establishing that *Greenholtz* and

*Allen*—not *Sandin*—supply the appropriate legal standard. (*See supra* Section II.A.)

> **C.    At all relevant times, it was clear under Nevada law that Chaziza was entitled to section 209.4465(7)(b)'s benefit.**

As noted, Defendants assert that Chaziza's right to the application of credits toward parole eligibility under Nevada law was not clear until *Williams* was decided in 2017. (AB 49.) Notably, however, Defendants' qualified immunity discussion nowhere acknowledges the *Vonseydewitz* decision, (*see id.* at 49–50), which contained the exact same holding two years earlier. As already explained, (*see supra* Section III.A; AOB 9–10), the Nevada Supreme Court specifically held in 2015 that, under section 209.4465(7)(b), the NDOC was required to apply statutory credits toward parole eligibility for prisoners with minimum-maximum sentences, *Vonseydewitz*, 2015 WL 3936827, at *2–3. Chaziza undisputedly fell into this category, a fact of which he repeatedly reminded Defendants. (AOB 17–18, 20–21 (citing 2-ER-146–48, 160–62).) Thus, although "there is no need that 'the very action in question [have] previously been held unlawful'" to defeat qualified immunity, *Safford Unified Sch. Dist. No. 1 v. Redding*, 557 U.S. 364, 377 (2009)

36

(quoting *Wilson v. Layne*, 526 U.S. 603, 615 (1999)), in this case, the court of last resort with definitive authority to resolve questions of state law had adjudicated the precise legal question at issue here well before Defendants denied Chaziza's first grievance.[15]

Defendants assert that *Vonseydewitz* did not suffice to clarify state law because it was an unpublished decision. (*See* AB 28, 38.) Yet, in the Ninth Circuit, unpublished decisions can clearly establish the law. *Prison Legal News v. Lehman*, 397 F.3d 692, 701–02 (9th Cir. 2005). Likewise, in circumstances similar to those in this case, unpublished state supreme court decisions have sufficed to settle state law for purposes of qualified immunity. *See Barnacascel v. Mont. Dep't of Corrs.*, 103 F. App'x 195, 197 (9th Cir. 2004) (determining that *Nelson v. Mahoney*, 12 P.3d 429 (Mont. 2000) (unpublished table opinion), clearly established that, as a matter of Montana law, state prisoners'

---

[15] The seven justices of the full Nevada Supreme Court were unanimous in denying en banc review. *See* 2-ER-141 (bearing the signatures of all seven justices who sat on the court at the time, with no noted dissents); Nev. Sup. Ct. Internal Operating Procs. R. 12(c) (June 1, 2013) (requiring that any dissent from denial of en banc reconsideration be noted on the order, identifying the dissenting justice(s)). Accordingly, the court's denial created even more certainty that the law was clearly settled than any published panel decision would have, as the latter could at most have the support of only three justices.

37

consecutive sentences were to be converted into concurrent terms upon parole); *see also Patrizi v. Huff*, 690 F.3d 459, 465–66 (6th Cir. 2012) (relying on unpublished Ohio Court of Appeals decisions to find multiple issues of Ohio law clearly established); *Rogers v. Pendleton*, 249 F.3d 279, 293 (4th Cir. 2001) (relying on an unpublished Circuit Court of Virginia decision to find an issue of Virginia law clearly established).

Moreover, the nonpublication of the *Vonseydewitz* decision does not mean it was not binding on the NDOC. Rather, as noted previously, the decision "establish[ed] mandatory precedent" with respect to NDOC officials—that is, with respect to the entire universe of defendants potentially involved in calculating the sentences of state prisoners— under the Nevada Rules of Appellate Procedure. Nev. R. App. P. 36(c)(2); *see supra* note 10. Contrary to Defendants' suggestions, (*see* AB 28, 38, 49–50), publication of the decision would not have further settled the law as applied to them.

Finally, in the unique circumstances of this case, there is simply no tenable argument that *Vonseydewitz* did not provide Defendants "fair notice" of their obligations under state law, which is the central

focus of the qualified immunity inquiry. *See Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (citation omitted); *Tolan*, 572 U.S. at 656; AB 46. Indeed, as noted above and in the Opening Brief, the NDOC's repeated representations to the Nevada Supreme Court in petitioning for rehearing of *Vonseydewitz* and the court's order explaining the decision's applicability to other prisoners—a copy of which Chaziza provided to Defendants—demonstrate that Defendants had actual knowledge of their obligations under *Vonseydewitz*. (*Supra* Section III.A; AOB 10–12, 43.) Not only does this further confirm that Chaziza's right to receive credit toward his parole eligibility date under section 209.4465(7)(b) was clear,[16] but it also provides an independent basis for

---

[16] Although qualified immunity's "clearly established" analysis is chiefly an objective one, *Anderson v. Creighton*, 483 U.S. 635, 639 (1987), a § 1983 defendant's actual knowledge of the law may constitute evidence that the law was, in fact, clearly established. *See Hope v. Pelzer*, 536 U.S. 730, 744–45 (2002) (finding unconstitutionality of defendants' conduct toward plaintiff prisoner clearly established, in part because they had previously received official advice that it was unlawful, suggesting that they knew as much); *Drummond ex rel. Drummond v. City of Anaheim*, 343 F.3d 1052, 1061–62 (9th Cir. 2003) (explaining that unconstitutionality of defendant police officers kneeling on plaintiff was clearly established, in part because defendants had received training warning them, and therefore would have known, that doing so could cause severe harm or death); *Vazquez v. County of Kern*, 949 F.3d 1153, 1164–65 (9th Cir. 2020) (holding that because defendant

(continued . . .)

precluding qualified immunity, since a foundational principle of the defense is that it affords no protection to "those who knowingly violate the law." *Kisela*, 138 S. Ct. at 1152 (citation omitted). Because Defendants not only had fair notice that their refusal to apply Chaziza's credits toward his parole eligibility violated Nevada law, but *actually knew* as much at the time, Defendants are not entitled to qualified immunity.

---

corrections officer had likely received training advising that observing prisoners while they showered was unlawful, he was not entitled to qualified immunity in a suit alleging he had done so).

# CONCLUSION

For the foregoing reasons and those set forth in Chaziza's Opening Brief, the summary judgment for Defendants should be reversed and the case should be remanded with instructions that the district court grant partial summary judgment on liability to Chaziza and proceed to a trial on damages.

March 22, 2021

**HORVITZ & LEVY LLP**
 BARRY R. LEVY
 EMILY V. CUATTO
**MCLANE, BEDNARSKI & LITT, LLP**
 CAITLIN S. WEISBERG
**UCLA SCHOOL OF LAW**
**NINTH CIRCUIT APPELLATE**
**ADVOCACY PRISONERS' RIGHTS**
**CLINIC**
 AARON LITTMAN
 ILSE M. GOMEZ
 BENJAMIN S. LEVINE


By:        s/Emily V. Cuatto


Attorneys for Plaintiff-Appellant
**Ahud Chaziza**

41

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT
### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** | 19-17506

I am the attorney or self-represented party.

**This brief contains** | 8,164 | **words**, excluding the items exempted

by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R.

App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

○ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

○ is an **amicus** brief and complies with the word limit of Fed. R. App. P.
29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

○ complies with the longer length limit permitted by Cir. R. 32-2(b) because
*(select only one):*

   ○ it is a joint brief submitted by separately represented parties;

   ○ a party or parties are filing a single brief in response to multiple briefs; or

   ○ a party or parties are filing a single brief in response to a longer joint brief.

○ complies with the length limit designated by court order dated |     | .

◉ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | s/Emily V. Cuatto     **Date** | Mar 22, 2021

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov